979 A.2d 146

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

**v.**

**Jose Expedito M. GARCIA.**

**Misc. Docket AG No. 9, Sept. Term, 2008.**

Court of Appeals of Maryland.

Aug. 28, 2009.

508

Gail D. Kessler, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, Atty. Grievance Com'n), for Petitioner.

Robert N. Levin, Rockville, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BATTAGLIA, J.

Jose Expedito Garcia, Respondent, pled guilty on November 29, 2007, to the crime of conspiracy to commit immigration

fraud, in violation of 18 U.S.C. §§ 371 [1] and 1546(a) [2] in the United States District Court for the Eastern District of Virginia; he was sentenced on February 8, 2008, to 10 weekends in jail, two years of supervised probation, 50 hours of community service, and a fine of $750.00.[3] Subsequently, Bar Counsel, acting on behalf of the Attorney Grievance Commission, Petitioner, on May 12, 2008, filed with this Court,[4] pursuant to Rules 16–751(a)(2) [5] and 16–771(b),[6] a Petition for Disciplinary

---

1. 18 U.S.C. § 371 (2006) provides in pertinent part:

   If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

2. 18 U.S.C. § 1546(a) (2006) provides in pertinent part:

   Whoever knowingly makes under oath, or ... under penalty of perjury ... knowingly subscribes as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly presents any such application, affidavit, or other document which contains any such false statement or which fails to contain any reasonable basis in law or fact [shall be guilty of a crime].

3. As a condition of his release on bond, Mr. Garcia consented to refrain from the practice of law, beginning November 29, 2007.

4. A show cause order was entered May 13, 2008, requiring Mr. Garcia "to show cause in writing why he should not be suspended immediately," based on "a judgment of conviction ... for a 'serious crime' as defined in Maryland Rule 16–701(k)," which states in relevant part:

   [A] crime that is in at least one of the following categories: (1) a felony under Maryland law, (2) a crime in another state or under federal law that would have been a felony under Maryland law had the crime been committed in Maryland, and (3) a crime under federal law or the law of any state that is punishable by imprisonment for three years or more.

   Mr. Garcia consented to a suspension, which became effective July 11, 2008.

5. Rule 16–751(a)(2) provides:

   (2) Conviction of crime; reciprocal action. If authorized by Rule 16–771(b) or 16–773(b), Bar Counsel may file a Petition for Disciplinary or Remedial Action in the Court of Appeals without prior approval of the Commission. Bar Counsel promptly shall notify the Com-

or Remedial Action.[7] Bar Counsel charged Mr. Garcia with violating Rule 8.4(a)-(d) of the Maryland Rules of Professional Conduct.[8] We referred the case, pursuant to Rule 16–752(a),[9] to the Honorable Eric M. Johnson of the Circuit Court for Montgomery County, for hearing pursuant to Rule 16–757(c).[10]

---

mission of the filing. The Commission on review may direct the withdrawal of a petition that was filed pursuant to this subsection.

6. Rule 16–771(b), governing disciplinary or remedial action upon conviction of a crime, provides:

(b) **Petition in Court of Appeals.** Upon receiving and verifying information from any source that an attorney has been convicted of a serious crime, Bar Counsel may file a Petition for Disciplinary or Remedial Action in the Court of Appeals pursuant to Rule 16–751(a)(2). The petition may be filed whether the conviction resulted from a plea of guilty, nolo contendere, or a verdict after trial and whether an appeal or any other post-conviction proceeding is pending. The petition shall allege the fact of the conviction and include a request that the attorney be suspended immediately from the practice of law. A certified copy of the judgment of conviction shall be attached to the petition and shall be prima facie evidence of the fact that the attorney was convicted of the crime charged.

7. Mr. Garcia received a one-year suspension in New York, commencing June 12, 2008. *In re Jose E.M. Garcia*, 53 A.D.3d 1032,1033, 860 N.Y.S.2d 923 (N.Y.App.Div.2008).

8. Rule 8.4 (misconduct) of the Rules of Professional Conduct, as relevant, provides:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Maryland Lawyer's Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice.

9. Rule 16–752(a) provides, in pertinent part:

(a) **Order.** Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing.

10. Rule 16–757(c) provides:

Following a hearing on December 17, 2008, Judge Johnson submitted his findings of fact as follows:

### Findings of Fact

Mr. Garcia, a member of the Maryland Bar since June 25, 1997, maintained an office for the practice of law in Falls Church, Virginia. Mr. Garcia is an attorney and partner in the law firm of Calonge, Garcia, and Associates, P.C. located in Falls Church, Virginia. The firm assists aliens seeking to obtain permission to work in and to secure lawful permanent residence in the United States.

On or about April 11, 2001, an alien, "N.V.," sought the immigration services of Mr. Garcia's firm which resulted in the firm filing an Application for Alien Labor Certification (form ETA 750) and a Petition for Alien Worker (form I–140) with what was then the Immigration and Naturalization Services (INS), and now Citizenship and Immigration Services (CIS). Because N.V. did not have the employment background and experience needed to qualify for that position, a false letter was created and filed in support of the forms filed with INS. The letter was drafted by Mr. Garcia's co-conspirator and falsely stated that N.V. had been employed in the field in the Philippines from October 1995 until June 1998. Mr. Garcia knowingly signed the letter in the name of the purported employer, and further, Mr. Garcia knew that the forged letter was to be filed with INS and was material to the adjudication of N.V.'s applications.

INS initially granted the form I–140 but later determined that the Certification for Employment was false based on information recorded in N.V.'s passport, which revealed that

(c) **Findings and conclusions.** The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party.

N.V. was working on a boat during the period when he purportedly was a caregiver in the Philippines. On April 22, 2003, INS sent a letter to Mr. Garcia's firm stating their intent to revoke the approval of the visa petition. Subsequently, Mr. Garcia persuaded his partner to draft a letter alleging that the fraudulent Certification of Employment was "in fact a product of an honest clerical error," and requested that the visa petition be withdrawn.

On November 29, 2007, in the United States District Court for the Eastern District of Virginia, Mr. Garcia was charged with one count of conspiracy to commit immigration fraud and was filed in the case captioned *United States of America v. Jose Expedito Garcia*, Case No. 1:07CR473–001. Further, on November 29, 2007, Mr. Garcia was convicted pursuant to a plea agreement under which he plead guilty to the Criminal Information charging him with conspiracy to commit immigration fraud in violation of 18 U.S.C. §§ 371 and 1546(a). Mr. Garcia was sentenced on February 8, 2008, to serve ten weekends in jail at the Alexandria Detention Center and placed on two years of supervised probation and to complete 50 hours of community service. Further, Mr. Garcia was ordered to pay a fine in the amount of $750.00 and $100.00 assessment.

(Footnotes omitted.)

Based upon these findings of fact, Judge Johnson concluded that Mr. Garcia violated Rule 8.4 of the Maryland Rules of Professional Conduct:

### Conclusions of Law

Maryland Rule 16–771(g) provides that "a final judgment of any court of record convicting an attorney of a crime, whether the conviction resulted from a plea of guilty, nolo contendere, or a verdict after trial, is *conclusive evidence of the guilt of the attorney of that crime*'" (emphasis added). Also, Maryland Rule of Professional Conduct 8.4 for misconduct states in relevant part that it is professional misconduct for a lawyer to:

    (a) violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another;

    (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other aspects;

    (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

    (d) conduct prejudicial to the administration of justice.

Mr. Garcia did violate the Maryland Rules of Professional Conduct by signing his name on a letter "purporting to verify employment for a [v]isa application" by representing himself to be the employer of the visa applicant. Despite the fact that it was Mr. Garcia's partner who drafted the fraudulent letter, which on its face did not appear to make any misrepresentations of fact immediately apparent to Mr. Garcia, his action of signing the letter was clearly intended to commit a fraud, deceive, or misrepresent to INS that he was the employer of N.V. Moreover, the conviction is a serious criminal act pursuant to Md. Rule 16–701(k) that puts into jeopardy Mr. Garcia's integrity as an attorney and hinders the proper administration of justice.

It is uncontested that Mr. Garcia was convicted in the United States District Court for the Eastern District of Virginia for conspiracy to commit immigration fraud in violation of 18 U.S.C. §§ 371 and 1546(a). An attorney convicted of a federal felony has committed a serious crime and engaged in professional misconduct. Thus, this Court finds that upon Mr. Garcia entering a guilty plea to the crimes charged in the United States District Court he necessarily violated MRPC 8.4 and as such is subject to discipline by the Court of Appeals of Maryland pursuant to Md. Rule 16–721(a).

(Footnotes omitted).

Judge Johnson added:

Finally, during the hearing on December 17, 2008, this Court was privy to observe Mr. Garcia's demeanor, candor,

and remorse for his conduct. Since the commencement of the proceedings in Virginia he has never contested his guilt, has accepted full responsibility for his unlawful conduct and demonstrated deep regret and embarrassment. Based on the testimony presented it is evident that his family has shared a brunt of the humiliation incurred by Mr. Garcia. It is not this Court's disposition to make any findings or recommendation beyond those mandated by Maryland Rules, but having observed Mr. Garcia's appearance of shame, this Court is compelled to make note of such behavior or repentance.

## I.  Standard of Review

██  In attorney discipline proceedings, this Court has original and complete jurisdiction and conducts an independent review of the record. *Attorney Grievance v. McClain,* 406 Md. 1, 17, 956 A.2d 135, 144 (2008); *Attorney Grievance v. Whitehead,* 405 Md. 240, 253, 950 A.2d 798, 806 (2008); *Attorney Grievance v. Zuckerman,* 403 Md. 695, 709, 944 A.2d 525, 534 (2008); *Attorney Grievance v. Nussbaum,* 401 Md. 612, 632, 934 A.2d 1, 12 (2007); *Attorney Grievance v. Lawson,* 401 Md. 536, 571–72, 933 A.2d 842, 863 (2007). We review the hearing judge's conclusions of law de novo. Rule 16–759(b)(1);[11] *McClain,* 406 Md. at 17, 956 A.2d at 144; *Whitehead,* 405 Md. at 253, 950 A.2d at 806; *Attorney Grievance v. Kreamer,* 404 Md. 282, 292, 946 A.2d 500, 506 (2008); *Attorney Grievance v. Parsons,* 404 Md. 175, 184, 946 A.2d 437, 443 (2008). In our review of the record, the hearing judge's findings of fact generally will be accepted unless they are clearly erroneous. Rule 16–579(b)(2);[12] *Whitehead,* 405 Md.

---

11.  Rule 16–759(b)(1) provides:

   (b) **Review by Court of Appeals.**
   (1) Conclusions of Law. The Court of Appeals shall review de novo the circuit court judge's conclusions of law.

12.  Rule 16–759(b)(2) provides:

   (2) Findings of Fact.

at 253, 950 A.2d at 806; *Attorney Grievance v. Harris*, 403 Md. 142, 155–56, 939 A.2d 732, 740 (2008); *Nussbaum*, 401 Md. at 632, 934 A.2d at 12; *Attorney Grievance v. Siskind*, 401 Md. 41, 54, 930 A.2d 328, 335 (2007); *Attorney Grievance v. Mininsohn*, 380 Md. 536, 564, 846 A.2d 353, 370 (2004).

## II.  Discussion

### A.  Findings of Fact

■ Both Bar Counsel and Mr. Garcia filed exceptions; none of them went to the heart of the matter. Both filed an exception with respect to Judge Johnson's finding that Mr. Garcia "represent[ed] himself to be the employer of the visa applicant" by signing the letter, because both note that Mr. Garcia actually signed the name of the purported employer of the visa applicant, not his own name. In the Statement of Facts, to which Mr. Garcia stipulated in his guilty plea, it was stated, "[w]hen he signed the letter in the purported employer's name, the defendant did not investigate the truth of the contents of the letter but believed it to be true." We sustain both parties' exceptions, because the record reflects that Mr. Garcia signed the purported employer's name, not his own name.

Bar Counsel then excepts to the hearing judge's finding that Mr. Garcia's "co-conspirator" and partner drafted the employment verification letter and asserts that Ms. Quidilla, the office manager/secretary, and not Mr. Garcia's law partner, drafted the employment verification letter. Based upon our review of the record, Ms. Quidilla actually prepared the em-

---

(A) If no exceptions are filed. If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any.

(B) If exceptions are filed. If exceptions are filed, the Court of Appeals shall determine whether the findings of fact have been proven by the requisite standard of proof set out in Rule 16–757(b). The Court may confine its review to the findings of fact challenged by the exceptions. The Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses.

ployment verification letter that Mr. Garcia signed, and so we sustain the exception.

Mr. Garcia excepts to the hearing judge's finding that he persuaded his partner to state in the letter withdrawing the visa application that the error was the product of an honest clerical mistake. The Statement of Facts, to which Mr. Garcia stipulated in his guilty plea, in actuality stated:

4. Although the INS initially granted the form I–140, the INS later determined that the Certification of Employment was necessarily false . . . . [and] CIS [Citizenship and Immigration Services] sent a letter to the defendant's firm announcing the intent to revoke the approval of the visa petition.

5. In response to that intent to revoke the approval of the visa petition, the defendant's partner . . . falsely asserted that the fraudulent Certification of Employment was "in fact a product of an honest clerical error." The defendant, who knew that he had forged the letter, persuaded his partner to include in the letter a request to withdraw the visa petition. As a result of that request, the INS granted the withdrawal. . . .'

Mr. Garcia, then, had persuaded his partner to include in the letter a request to withdraw the visa petition, rather than, had persuaded the partner to include that the mistake was "in fact a product of an honest clerical error." Thus, we sustain this exception.

We have reviewed the remaining findings of fact and conclude that they are supported by clear and convincing evidence.

## B. Conclusions of Law

Neither Bar Counsel nor Mr. Garcia excepted to any of Judge Johnson's Conclusions of Law. Judge Johnson found violations of Rule 8.4(a)-(d), based primarily upon the facts and circumstances surrounding Mr. Garcia's guilty plea to conspiracy to defraud the federal government in violation of 18 U.S.C. §§ 371 and 1546(a) (2006).

Based upon our de novo review, we agree that Mr. Garcia violated Rule 8.4(a)-(d). Rule 8.4(b) provides that it is professional misconduct for a lawyer to:

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

Judge Johnson concluded that Mr. Garcia was "convicted of a federal felony [and] has committed a serious crime and engaged in professional misconduct." [13] Mr. Garcia pled guilty and was convicted and sentenced for conspiracy to defraud the United States and making a false statement related to his signing the false employer letter, knowing that it was false. A guilty plea to such offenses necessarily reflects adversely on Mr. Garcia's honesty and trustworthiness as a lawyer, particularly because his conduct occurred in his role as an attorney. *See Attorney Grievance v. Wingerter*, 400 Md. 214, 222, 929 A.2d 47, 52 (2007) (finding violation of Rule 8.4(b) when lawyer pled guilty to misprision of immigration fraud for, among other things, permitting others to falsely sign the names of purported employers).

Rule 8.4(c) states that it is professional misconduct for a lawyer to:

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

Judge Johnson concluded that "[Mr. Garcia's] action of signing the letter was clearly intended to commit a fraud, deceive, or misrepresent ....," which constitutes a violation of Rule 8.4(c). In *Attorney Grievance v. Wingerter*, 400 Md. at 222,

---

**13.** Rule 16–701(k) defines serious crime as:

[A] crime that is in at least one of the following categories: (1) a felony under Maryland law, (2) a crime in another state or under federal law that would have been a felony under Maryland law had the crime been committed in Maryland, and (3) a crime under federal law or the law of any state that is punishable by imprisonment for three years or more.

18 U.S.C. § 371, notably, is a felony under federal law that can carry up to 5 years in prison; thus, Mr. Garcia pled guilty to a serious crime under the Rules.

929 A.2d at 52, we concluded that Rule 8.4(c) was violated when an attorney pled guilty federally to misprision of a felony, after acknowledging that he was not only aware of the existence of a conspiracy to engage in immigration fraud, but acted to conceal such activity:

> [Wingerter] pled guilty to misprision of a felony and the statement of facts in support detailed the circumstances in which the crime occurred. The respondent admitted being aware of facts indicating that the named co-defendants were engaging in immigration fraud, making false statements and encouraging aliens to enter this country illegally and not reporting those crimes to the proper authorities. But the respondent also admitted taking steps to conceal the conspiracy. This was evidence of not simply a passive involvement; it demonstrated an active involvement. With this active concealment as a predicate, the hearing court can hardly be faulted for concluding that the respondent engaged in conduct in violation of Rule 8.4(b) and (c)—helping and counseling violators as to how to conceal their violations is a criminal act that reflects adversely on a lawyer's honesty, trustworthiness or fitness in other regards—and, in so doing, also engaged in conduct involving dishonesty, fraud, deceit or misrepresentation.

*Id.* at 230–31, 929 A.2d at 57–58 (footnote omitted). In the instant matter, Mr. Garcia pled guilty to aiding another in committing immigration fraud, as well as to active involvement in the fraud. Clearly, this is conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of Rule 8.4(c), as the hearing judge concluded.

Rule 8.4(a) states:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

Judge Johnson found, and we agree, that Mr. Garcia violated the Rules of Professional Conduct Rules 8.4(b)-(c). This conclusion sufficiently satisfies the parameters of a Rule 8.4(a)

violation. *Attorney Grievance v. Webster,* 402 Md. 448, 468, 937 A.2d 161, 172 (2007). ("Because we have concluded that Respondent has violated various Rules of Professional Conduct, we overrule Respondent's exception that he violated MRPC 8.4(a), which finds professional misconduct where a lawyer 'violates or attempts to violate the Rules of Professional Conduct.' ").

Finally, Rule 8.4(d) provides that it is professional misconduct for a lawyer to:

(d) engage in conduct that is prejudicial to the administration of justice;

Judge Johnson ruled that Mr. Garcia intentionally defrauded and deceived the immigration authorities, thereby "put[ting] into jeopardy Garcia's integrity as an attorney and hinder[ing] the proper administration of justice." We have recognized that public confidence in the legal profession is a critical facet to the proper administration of justice, and conduct that negatively impacts on the public's perception of the courts or the legal profession violates Rule 8.4(d). *Whitehead,* 405 Md. at 260, 950 A.2d at 810; *Attorney Grievance v. Sheinbein,* 372 Md. 224, 252–53 & n. 16, 812 A.2d 981, 996–97 & n. 16 (2002); *Attorney Grievance v. Richardson,* 350 Md. 354, 368, 712 A.2d 525, 532 (1998). Mr. Garcia's acts undermined public confidence in the efficacy of the immigration system and the importance of compliance with the law. Accordingly, we agree with Judge Johnson that Respondent violated Rule 8.4(d).

## III. Sanction

Bar Counsel recommends that Mr. Garcia be disbarred, while Mr. Garcia recommends that we impose a two-year suspension from the practice of law to run concurrent with the one-year suspension imposed by New York, which commenced on June 12, 2008.

We evaluate every attorney grievance matter on its own merit s, taking into account the facts and circumstances involved. *See Attorney Grievance Comm'n v. Powell,* 328 Md. 276, 300, 614 A.2d 102, 114 (1992); *Attorney Grievance*

*Comm'n v. Kemp,* 303 Md. 664, 680, 496 A.2d 672, 680 (1985). The goal of attorney discipline is protection of the public, rather than the punishment of the erring attorney. *Attorney Grievance v. Goff,* 399 Md. 1, 30–31, 922 A.2d 554, 571 (2007); *Attorney Grievance v. Mba–Jonas,* 397 Md. 690, 702–03, 919 A.2d 669, 677 (2007); *Attorney Grievance v. Rees,* 396 Md. 248, 254, 913 A.2d 68, 72 (2006); *Attorney Grievance v. Kreamer,* 387 Md. 503, 533–34, 876 A.2d 79, 97 (2005). Imposing sanctions that are commensurate with the nature and gravity of the violations and the intent with which they were committed is consistent with, and in fact furthers, that purpose, *Goff,* 399 Md. at 30–31, 922 A.2d at 571; *Attorney Grievance v. Stein,* 373 Md. 531, 537, 819 A.2d 372, 375 (2003), in that such sanctions promote general and specific deterrence, *Attorney Grievance Comm'n v. Sliffman,* 330 Md. 515, 529, 625 A.2d 314, 321 (1993); protect the integrity of the legal profession, *Attorney Grievance v. Cassidy,* 362 Md. 689, 698, 766 A.2d 632, 637 (2001); further the public's confidence in the legal profession, *Attorney Grievance v. Christopher,* 383 Md. 624, 639, 861 A.2d 692, 701 (2004); *Stein,* 373 Md. at 537, 819 A.2d at 375; *Attorney Grievance v. Powell,* 369 Md. 462, 474, 800 A.2d 782, 789 (2002); and take account of the facts and circumstances of each particular case. *See Attorney Grievance v. Atkinson,* 357 Md. 646, 656, 745 A.2d 1086, 1092 (2000); *Attorney Grievance v. Gavin,* 350 Md. 176, 197, 711 A.2d 193, 204 (1998).

■ When an attorney's conduct involves intentional dishonesty, fraud, deceit or misrepresentation, we do not discuss "degrees" of dishonesty, but generally order disbarment, absent compelling extenuating circumstances. *Attorney Grievance v. Vanderlinde,* 364 Md. 376, 418, 773 A.2d 463, 488 (2001). In *Vanderlinde,* we explained that disbarment was warranted because dishonest conduct by a lawyer is beyond excuse:

Upon reflection as a Court, in disciplinary matters, we will not in the future attempt to distinguish between degrees of intentional dishonesty based upon convictions, testimonials or other factors. Unlike matters relating to compe-

tency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in an attorney's character.

Disbarment ordinarily should be the sanction for intentional dishonest conduct.

*Id.* Compelling extenuating circumstances, we have held, must be "present and associated with the illegal or improper acts at the time committed." *Id.* at 397, 773 A.2d at 475.

The *Vanderlinde* dictates are applicable, because the hearing judge found, and we agree, that "[Mr. Garcia's] action of signing the letter was clearly intended to commit a fraud, deceive, or misrepresent." Such a finding warrants disbarment, absent compelling extenuating circumstances. *See Id.* at 418, 773 A.2d at 488.

■ Mr. Garcia states that "there are a number of mitigating factors that, taken together," amount to compelling extenuating circumstances. He posits that "he falsely signed what he believed to be a true statement for the purpose of saving a client's 'once-in-a-lifetime' opportunity to apply for a green card at the request of someone he trusted"; that "[h]is primary motive was to protect the interest of the client"; and that "[h]e did not intend to profit personally from his actions." Mr. Garcia's argument that an intentional and admitted fraud perpetrated against the immigration authorities is mitigated by a purported protection of the interests of a client, from which he failed to personally profit, is fatuous. Violations of Rule 8.4 are not justified by reference to the ends when illegal methods are utilized, nor by whether the attorney profited from the illicit behavior.

Mr. Garcia posits that his contrition before the hearing judge is compelling, but it is axiomatic that the vast majority of attorneys who face misconduct charges are contrite before the hearing judges, because we consider lack of remorse to be an aggravator. Mr. Garcia also argues that it is compelling

that the public was not harmed by his actions, because the immigration authorities discovered the fraud, and because he suggested withdrawal of the visa application before any action was taken; he also posits that he has already been "severely punished" for his acts. Mr. Garcia has not cited, nor have we found, any case in which we have determined that frustration of the success of a criminal enterprise, coupled with punishment, is a compelling extenuating circumstance. The public should be relieved that Mr. Garcia was not successful in perpetuating a fraud, but they are not protected by the fact that he pled guilty and was punished—an issue about which we should not be concerned because punishment is not a goal of attorney sanctions. Rather, protection of the public from the type of egregiously poor judgment as exhibited by Mr. Garcia is the goal, and, considering the dearth of compelling extenuating circumstances, this can only be effected through disbarment.

Disbarment in the present case is consistent with the sanction we imposed in *Wingerter*, 400 Md. at 236, 929 A.2d at 60. In *Wingerter*, Chief Judge Robert M. Bell, writing on behalf of a unanimous court, ordered the disbarment of an attorney for his involvement in a conspiracy to defraud the INS. Wingerter had been employed as in-house counsel for Global Recruitment and Immigration Services, Inc., a company that came under investigation by the federal government for immigration fraud, and pled guilty to misprision of a felony. In his guilty plea, Wingerter acknowledged that he took no steps to prevent the fraud and was active in the concealment of the crime:

"[He] did not notify federal judicial or law enforcement authorities of the fraud [or] take steps to stop the fraud [and he] took at least two steps to conceal the crime. First, [he] instructed employees at Global to start writing their initials next to his signature whenever they forged it, but further instructed the same employees to refrain from marking their initials whenever they forged an immigrant's or an employer's signature on an ETA 750 application (or related documents). [He] instructed the employees so be-

cause he was concerned that if the employees began to initial the forged signatures of the immigrants and employers on the ETA 750 applications, the initials would expose the fact that the signatures were in fact forgeries. Second, [he] repeatedly informed the Department of Labor and certain immigrant clients that certain of the employer sponsors had decided to abandon certain ETA 750 applications for economic reasons when in fact he knew or should have known that it was because the government was investigating Global."

*Id.* at 221–22, 929 A.2d at 52 (footnote omitted). The hearing judge found substantial facts to show that Wingerter intended to defraud the government and reached the conclusion, with which we agreed, that Wingerter violated Rule 8.4(b) and (c):

"5. That the statement of facts is unambiguous in describing dishonest, fraudulent and deceitful conduct by the Respondent over a time frame from 2000 to 2004 while Respondent was employed as in-house counsel for Global Recruitment and Immigration Services, Inc. (GRIS) based in Falls Church, Virginia.

6. That the conduct referenced in paragraph 5 included but was not limited to.

a. Respondent's awareness that his signature on various immigration documents was being forged.

b. Respondent's awareness that the signatures of immigrant clients of GRIS were being forged.

c. Respondent's awareness that a light box was being utilized to forge signatures.

d. Respondent's awareness that hundreds of ETA 750 applications were submitted on behalf of Cleaners of America (a potential employer of immigrant clients of GRIS) even though Cleaners of America did not have the capacity to hire such large numbers of immigrants.

e. Respondent's awareness that he was not, in his capacity as GRIS' in house legal counsel, the attorney of record for the applicants referenced in paragraph d.

f. Respondent's awareness that GRIS was under investigation by the Federal government regarding the submission of hundreds of ETA 750 forms on behalf of immigrant clients.

g. Respondent's awareness [that] GRIS was misinforming its immigrant clients regarding the status of their ETA 750 applications.

h. Respondent's awareness of GRIS charging its immigrant clients fees to prepare ETA 750 forms."

*Id.* at 219–20, 929 A.2d at 50–51 (internal quotations omitted).

We applied the *Vanderlinde* standard of disbarment in *Wingerter* and explained that "absen[t] compelling extenuating circumstances justifying a lesser sanction, intentional dishonest conduct by a lawyer will result in disbarment." *Id.* at 235, 929 A.2d at 60, quoting *Attorney Grievance v. Ward*, 396 Md. 203, 218, 913 A.2d 41, 50 (2006). We determined that Wingerter's " 'stellar' practice, his pro bono commitment, his lack of pecuniary over-reaching or motivation and his mentoring," although "commendable and . . . not [to be] disregarded," did not meet the "standard . . . [of] compelling extenuating circumstances that would justify a lesser sanction than disbarment." *Id.* at 236, 929 A.2d at 60.

In the present case, Judge Johnson's finding that Mr. Garcia "clearly intended" to defraud the immigration authorities is remarkably similar to the *Wingerter* findings. Although Mr. Garcia attempts to distinguish his circumstances from those of Wingerter's by arguing that Wingerter overlooked hundreds of instances of immigration fraud, whereas he only was convicted of a single instance of immigration fraud, we have repeatedly stated that "one instance of misconduct can be so egregious as to warrant the imposition of a significant sanction," such as disbarment. *Attorney Grievance v. Gisriel*, 409 Md. 331, 386, 974 A.2d 331, 363 (2009) (disbarring an attorney after a single instance of misappropriating funds by forging a client's signature on a check); *see also Attorney Grievance v. Roberts*, 394 Md. 137, 146, 166–67, 904 A.2d 557, 562, 574–75 (2006) (same). We also are cognizant that like

Wingerter, Mr. Garcia perpetrated fraud in his purported area of legal expertise, that of service to immigrants seeking green cards, making his conduct particularly egregious.

Mr. Garcia also attempts to distinguish himself from Wingerter by likening his case to other cases in which we have not ordered disbarment. The cases of *Attorney Grievance Comm'n v. Parsons*, 310 Md. 132, 527 A.2d 325 (1987), *Attorney Grievance Comm'n v. Maxwell*, 307 Md. 600, 516 A.2d 570 (1986), and *Prince George's County Bar Association v. Vance*, 273 Md. 79, 327 A.2d 767 (1974), to which Mr. Garcia refers, are inapposite because they were decided before our bright-line admonition in *Vanderlinde* that disbarment results from "intentional dishonest conduct," absent compelling extenuating circumstances. 364 Md. at 418, 773 A.2d at 488.

Mr. Garcia also relies on *Attorney Grievance v. Potter*, 380 Md. 128, 844 A.2d 367 (2004) and *Attorney Grievance v. Floyd*, 400 Md. 236, 929 A.2d 61 (2007), cases in which we ordered 90–days suspensions for violations of Rule 8.4. In *Potter*, the Respondent left a firm after numerous disputes over various compensation matters. He became a sole practitioner and took two of the firm's clients and deleted their files from the office computers without permission. Potter was charged with violating Rule 8.4(b)-(d), but the hearing judge did not determine that the Rule had been violated. Although we disagreed with the hearing judge, we did not conclude that Potter had exhibited an intent to defraud, 380 Md. at 152–154, 844 A.2d at 381–82, nor did we apply *Vanderlinde* as dispositive. *Id.* at 161–64, 844 A.2d at 386–88.

In the case of *Floyd*, Floyd applied for a job with the Federal Trade Commission and failed to disclose, among other things, that her current employer and her primary reference was actually her husband. Floyd's employer/husband also wrote a letter to the FTC indicating that he would pay her $55,000 per year to remain at his firm—a letter that ultimately caused the FTC to raise her initial salary from $42,724 per year to $51,269 per year. After hiring Floyd, the FTC learned that her husband had provided the positive recommen-

dation and the salary letter and referred the case to Maryland Bar Counsel. The hearing judge concluded that Floyd violated Rule 8.4(c), recognizing that, " '[Floyd] did not *explicitly* misstate any fact ... [but] the law recognizes that deceit can be based on concealment of material facts as well as on overt misrepresentations.' " 400 Md. at 246, 929 A.2d at 66. Although we agreed with the hearing judge, we did not employ the *Vanderlinde* standard and concluded that a 90–days suspension was appropriate, in the absence of an explicit finding of an intent to defraud. *Id.* at 258, 929 A.2d at 74.

Mr. Garcia's reliance on *Attorney Grievance v. Sweitzer*, 395 Md. 586, 911 A.2d 440 (2006) is also misplaced, because *Sweitzer* actually supports the imposition of disbarment in this case. In *Sweitzer*, we indefinitely suspended an attorney after he signed his estranged wife's name on a Motor Vehicle Administration, title-transfer Gift Certificate Form, without her authority, to take sole possession of the family car. When discussing sanctions, we explained that when "the government has been the victim of a violation of Maryland Rules of Professional Conduct 8.4(c) and (d)" whether fraudulent intent can be proven is dispositive:

> Indefinite suspension has been deemed appropriate when the proof of a violation of Maryland Rules of Professional Conduct 8.4(c) and (d) has fallen short of proof of fraudulent intent.
>
> \*     \*     \*
>
> We have ordered disbarment when the findings of fact supporting the violation of Maryland Rules of Professional Conduct 8.4(c) and (d) reflected an intent to defraud the government.

*Id.* at 601, 911 A.2d at 449. In *Sweitzer*, the hearing judge did not find an intent to defraud the government, so that an indefinite suspension was ordered. *See id.* at 603, 911 A.2d at 450. In the present case, the hearing judge did explicitly conclude that Mr. Garcia exhibited an intent to defraud the inmigration authorities: "[Mr. Garcia's] action of signing the letter was clearly intended to commit a fraud, deceive, or

misrepresent to INS." Thus, under the logic of *Sweitzer*, Mr. Garcia should be disbarred.

Mr. Garcia also alleges that:

"Other cases involving criminal conduct by an attorney which did not lead to disbarment include: *Attorney Grievance Comm'n of Maryland v. Saul*, 337 Md. 258, 653 A.2d 430 (1995) (lawyer convicted of bank fraud suspended indefinitely rather than disbarred in a reciprocal discipline case due to the absence of personal gain and lack of active participation in the fraud); *Attorney Grievance Comm'n of Maryland v. Gittens*, 346 Md. 316, 697 A.2d 83 (1997) (lawyer convicted of first degree theft that initially included a mail fraud indictment suspended indefinitely rather than disbarred in a reciprocal discipline case after addiction to cocaine was found to be the root cause of the misconduct); *Attorney Grievance Comm'n of Maryland v. Mollick*, 401 Md. 168, 931 A.2d 1092, Misc. Docket AG No. 32, Sept. Term 2007 (Joint Petition for Indefinite Suspension by Consent upheld by the Court despite the attorney's conviction for misprision of a felony as corporate counsel for a company accused of securities fraud and filing false financial statements, i.e., 'illegal pyramid schemes'); *Attorney Grievance Comm'n of Maryland v. Holt*, 402 Md. 350, 936 A.2d 848, Misc. Docket AG No. 12, Sept. Term 2005 (lawyer serving as an Administrative Law Judge with U.S. Department of Agriculture who was convicted of drug possession and aiding and abetting the possession of cocaine suspended indefinitely rather than disbarred despite a finding of close connection between the lawyer's conduct and the practice of law); Mr. Holt was reinstated in *In re: Reinstatement of Holt*, 402 Md. 350, 936 A.2d 848 (2007). *Attorney Grievance Comm'n of Maryland v. Eckel*, 392 Md. 75, 896 A.2d 304, Misc. Docket AG No. 75, Sept. Term 2005 (Joint Petition for Reprimand by Consent approved by the court despite the attorney's conviction of possession for cocaine in violation of MRPC 8.4(b))."

We repeatedly have recognized that each attorney grievance case rests on its own merits. In the cases cited, our *Vanderlinde* presumption of disbarment was not implicated.

Mr. Garcia, finally, posits that the New York proceedings instituted against him and his partner should influence our disciplinary sanction in this case. This case is not one of reciprocal discipline, but one premised upon conviction of a serious crime under Rule 16–771(b).

To conclude, in the present case, Judge Johnson found, in an immigration matter, that Mr. Garcia "intended to commit a fraud, deceive, or misrepresent," and there are no compelling extenuating circumstances. Accordingly, we order disbarment.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COST OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715(c), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION.**

BELL, C.J., GREENE and MURPHY, JJ., dissent.

Dissenting Opinion by GREENE, J., in which BELL, C.J., and MURPHY, J., join.

I agree with the majority's conclusion that Respondent violated Maryland Rule of Professional Conduct (MRPC) 8.4; however, I disagree that disbarment is the appropriate sanction. I would impose an indefinite suspension, with Respondent's reinstatement to the Maryland Bar conditioned upon his reinstatement to the New York Bar. In this case, I would either defer to the New York Supreme Court, treat the case as a reciprocal discipline case, and impose the same sanction, or I would apply the rationale of *Attorney Grievance v. Sweitzer*, 395 Md. 586, 911 A.2d 440 (2006), the effect of which requires that we impose an indefinite suspension.

## Reciprocal Discipline

Respondent resides in Maryland and is a member of the Maryland Bar, but maintains an office in Virginia for a practice limited exclusively to matters before the United States Citizenship and Immigration Service (CIS). The conduct that is the basis for his violation of MRPC 8.4 occurred in Virginia and is directly related to Respondent's practice as an immigration lawyer in that state. Respondent does not hold a Virginia license to practice law, and he is not required to do so in order to maintain an office in Virginia for the limited practice outlined in these proceedings. Va. State Bar Comm. on Unauthorized Practice of Law, Op. 55 (1983) (stating that it is not the unauthorized practice of law in Virginia to maintain an office in that state limited exclusively to the practice of immigration matters); *Va. Sup.Ct. R.* Pt. 6, Sec. I, UPR 9–102 and 9–103 (authorizing attorneys not licensed to practice law in Virginia to practice before federal administrative agencies in connection with immigration matters).

Because Respondent is licensed to practice law in New York and Maryland, he is subject to the disciplinary regulations governing the practice of law in both states. Respondent has been a member of the New York Bar since 1995 and a member of the Maryland Bar since June 25, 1997. New York acted first to initiate disciplinary proceedings. On June 12, 2008, the Appellate Division of the New York Supreme Court, the body that decides attorney disciplinary matters in that State, entered an interim Order of suspension, and on July 31, 2008, as a sanction for Respondent's misconduct in this matter, the court suspended Respondent from the practice of law in that state for a period of one year, effective June 12, 2008. *In re Jose E.M. Garcia,* 53 A.D.3d 1032, 860 N.Y.S.2d 923 (2008). Under New York law, although immigration fraud is a federal felony, and the crime "has no New York felony analog, it is considered a 'serious crime' (Judiciary Law § 90[4][d] ) [and] warrant[s an] interim suspension from the practice of law" pending a final disciplinary order. *See In re Markovitch,* 191 A.D.2d 116, 600 N.Y.S.2d 634, 635 (1993). Thus, New York was the original jurisdiction to consider this matter for pur-

poses of taking disciplinary action. *See Attorney Grievance v. Parsons*, 310 Md. 132, 142, 527 A.2d 325, 330 (1987) (noting that in cases of reciprocal discipline "we look not only to the sanction imposed by the other jurisdiction but to our own cases as well. The sanction will depend on the unique facts and circumstances of each case, but with a view toward consistent dispositions for similar misconduct.")

Maryland Rule 16–773(b) provides that "[u]pon receiving and verifying information from any source that in another jurisdiction an attorney has been disciplined . . ., Bar Counsel may file a Petition for Disciplinary or Remedial Action in the Court of Appeals pursuant to Rule 16–751(a)(2)." A reciprocal discipline case arises when

"an attorney who in another jurisdiction (1) is disbarred, suspended, or otherwise disciplined, (2) resigns from the bar while disciplinary or remedial action is threatened or pending in that jurisdiction, or (3) is placed on inactive status based on incapacity," Maryland Rule 16–773(a), and bar counsel has filed a Petition for Disciplinary or Remedial Action in the Court of Appeals, pursuant to Rule 16–751(a)(2). Maryland Rule 16–773(b).

*Attorney Grievance v. Weiss*, 389 Md. 531, 556–57, 886 A.2d 606, 621 (2005) (Bell, C.J., dissenting). Even Judge Cathell, writing for the majority in *Weiss*, 389 Md. at 555, 886 A.2d at 620, pointed out that "Rule 16–773 requires the application of reciprocal discipline unless there is clear and convincing evidence that such application will result in grave injustice or that the conduct warrants a different sanction in this State."

In *Weiss*, this Court reaffirmed that "we usually do not deviate from the original jurisdiction's sanction," but "we will do so when the conduct involved is of such [a] nature that it would not be tolerated from any member of the Bar in this State if the conduct occurred here." 389 Md. at 552, 886 A.2d at 618. Although Petitioner did not seek reciprocal discipline in this case, either by initiating or processing the case as such, the facts and circumstances involved conduct that warranted a sanction by the New York Supreme Court, and that court did

impose a sanction. *See Attorney Grievance v. Steinberg,* 385 Md. 696, 704 n. 9, 870 A.2d 603, 608 n. 9 (2005) (noting that in imposing disciplinary sanctions it is our duty to look not only at the sanction imposed by the other jurisdiction, but to the particular facts and circumstances of each case "with a view toward consistent dispositions for similar misconduct" (quoting *Attorney Grievance v. Ruffin,* 369 Md. 238, 253–54, 798 A.2d 1139, 1148 (2002))). Thus, even though Petitioner did not seek a reciprocal sanction, given the circumstances, one of which is the action taken by the New York Supreme Court, it is appropriate to defer to the original jurisdiction that sanctioned Respondent because the New York Supreme Court's "responsibilities, like ours, include oversight and regulation of the profession, [and it] was aware of the [facts and circumstances]." *Steinberg,* 385 Md. at 705, 870 A.2d at 608.

It should be noted that while Rule 16–773 and case law above applying that rule explain why we should defer to the New York Supreme Court in this case, deference, nonetheless, should not depend upon application of that rule. Rule 16–773 advances goals—comity and consistency—that remain applicable in any attorney discipline case where another state has issued a judgment on the same facts. *See Attorney Grievance v. Whitehead,* 390 Md. 663, 694–95, 890 A.2d 751, 770 (2006) (Bell, C.J., dissenting). Although this Court has rejected the notion that these goals bind us to the decisions of other courts, they are important goals nonetheless. *See Whitehead,* 390 Md. at 675, 890 A.2d at 758 (noting the importance of both goals). To further those goals, this Court should defer to another state's prior judgment on the same facts in an attorney discipline case, even when the case was not initiated as a reciprocal discipline matter.[1]

---

1. Furthermore, I question the propriety of allowing the Attorney Grievance Commission and Bar Counsel to determine, unilaterally, whether we defer to another state's judgment in an attorney discipline matter. In a case like this one, where an attorney has committed a "serious" crime and has been disciplined in another state, the Commission has discretion to initiate the case based on either the attorney's prior conviction or the other state's disciplinary judgment. *See* Md. Rule 16–

## Proper Sanction

Regarding the proper sanction to be imposed in attorney disciplinary matters, we recently reiterated, in *Attorney Grievance v. Wingerter,* 400 Md. 214, 234, 929 A.2d 47, 59–60 (2007), the purpose and goal of attorney disciplinary proceedings:

This Court has made clear that the well settled purpose and goal of attorney discipline proceedings is to protect the public, not to punish the erring attorney. That purpose is achieved, the public is protected, when the sanctions are commensurate with the nature and gravity of the violations and the intent with which they were committed. While the circumstances of each case—the nature and effect of the violations—are critical, and ordinarily decisive, factors in determining the severity of the sanction to be imposed, there are other important factors we have identified, including the lawyer's state of mind which underlies the misconduct, actual or potential injury flowing from the misconduct, the duty of this Court to preserve the integrity of the profession, the risk to the public in allowing the Respondent to continue in practice, and any mitigating or aggravating factors, the attorney's remorse for the misconduct, the likelihood of repetition of the misconduct, and the attorney's prior grievance history. (Citations omitted.)

We have stated on numerous occasions that "absent compelling circumstances conduct involving fraud or deceit will result in disbarment." *Attorney Grievance v. Molovinsky,* 300 Md. 291, 296, 477 A.2d 1181, 1184 (1984). We have explicated the rationale for this position:

It is well settled that [d]isbarment ordinarily should be the sanction for intentional dishonest conduct. This is so, because [u]nlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely en-

---

771(b); Md. Rule 16–773(b). By choosing not to give any weight to New York's decision simply because the Commission initiated this case under Rule 16–771, we undermine our own ability to further the goals of comity and consistency that Rule 16–773 advances.

twined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Thus, like in the case of a misappropriation of entrusted funds, in the absence of compelling extenuating circumstances justifying a lesser sanction, intentional dishonest conduct by a lawyer will result in disbarment. (Citations omitted.)

*Attorney Grievance v. Ward,* 396 Md. 203, 218, 913 A.2d 41, 50 (2006). As to extenuating circumstances, we pointed out in *Attorney Grievance v. Vanderlinde,* 364 Md. 376, 397, 773 A.2d 463, 475 (2001) (quoting *Attorney Grievance v. Flynn,* 283 Md. 41, 45, 387 A.2d 775, 777 (1978)), that the compelling extenuating circumstances must be "present and associated with the illegal or improper acts at the time committed. . . ." As to the underlying criminal act giving rise to disciplinary action, we have said that "conduct occurring after the crime does not constitute an extenuating circumstance; rather, only mitigating factors present at the time of the commission of the crime are relevant." *Molovinsky,* 300 Md. at 297, 477 A.2d at 1184–85. We have defined "mitigating factors," pursuant to the American Bar Association Standards for Imposing Lawyer Sanctions (ABA Standards) (1986), as including

absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

*Sweitzer,* 395 Md. at 599, 911 A.2d at 448 (citing *Attorney Grievance v. Glenn,* 341 Md. 448, 488–89, 671 A.2d 463, 483 (1996), for its application of the ABA Standards, Standard 9.31).

Although we have hewed to our statement that intentional dishonest conduct ordinarily requires disbarment, we have not ignored our corresponding statement that mitigating factors can lead us to impose a less severe penalty. For example, in *Attorney Grievance v. Floyd*, 400 Md. 236, 254, 929 A.2d 61, 71 (2007), we explicitly pointed out that Ms. Floyd, who had omitted information in a letter to the Federal Trade Commission, had "engaged in 'conduct involving dishonesty, fraud, deceit, or misrepresentation' in violation of [MRPC] 8.4(c). . . ." We noted that even though Ms. Floyd had not lied in her letter, "deceit can be based not only on overt misrepresentation but on concealment of material facts." *Floyd*, 400 Md. at 252, 929 A.2d at 70. Nonetheless, we imposed only a 90–day suspension, noting that Ms. Floyd had "no prior disciplinary record," that she had not engaged in "a pattern of misconduct," and that she had "acknowledged her error." *Floyd*, 400 Md. at 259, 929 A.2d at 74.

Similarly, in *Attorney Grievance v. Lawson*, 401 Md. 536, 576–77, 933 A.2d 842, 866 (2007), we determined that Mr. Lawson engaged in actions that "involved dishonesty and deceit and were prejudicial to the administration of justice." We "analyz[ed] analogous cases and consider[ed] all of the mitigating and aggravating circumstances, including both Respondent's relative youth and inexperience and his lack of remorse and apprehension of the wrongness of his actions," and indefinitely suspended Mr. Lawson, with the right to reapply for admission after one year. *Lawson*, 401 Md. at 585–86, 933 A.2d at 871. In *Attorney Grievance v. Harrington*, 367 Md. 36, 48, 51, 785 A.2d 1260, 1267, 1269 (2001), we also determined that the attorney had "engaged in dishonesty, deceit and misrepresentation," but imposed only an indefinite suspension. Each of these cases is consistent with our requirement that we "appl[y] the facts and circumstances . . . to determine the appropriate sanction" in each attorney grievance case, even in matters involving intentional dishonest conduct. *Attorney Grievance v. Duvall*, 373 Md. 482, 497, 819 A.2d 343, 352 (2003) (quoting *Attorney Grievance v. Lane*, 367 Md. 633, 647, 790 A.2d 621, 628–29 (2002)).

Of our attorney misconduct cases since *Vanderlinde, Sweitzer* is the most analogous to the case *sub judice.* In *Sweitzer,* 395 Md. at 597, 911 A.2d at 447, the Commission, through Bar Counsel, recommended that we impose the sanction of disbarment because an attorney was found to have violated MRPC 8.4(c) and (d) for "making two misrepresentations—presenting the Gift Certification Form to the [Motor Vehicle Administration (MVA)] for a vehicle he purchased at auction and misrepresenting that he had his former wife's authority to sign the Gift Certification Form on her behalf—in an effort to avoid payment of a vehicle sales tax and inspection fee." In that case, Bar Counsel argued "that the most important factors to consider when imposing disciplinary sanctions are the nature of the misconduct and the lawyer's motives." *Id.* In arriving at the appropriate sanction for the lawyer's misconduct, we considered not only the nature of the lawyer's conduct and motives, but applied the ABA Standards as a framework for determining that an indefinite suspension was the appropriate sanction. *Sweitzer,* 395 Md. at 598–606, 911 A.2d at 447–52. We concluded that "an indefinite suspension [was] a more appropriate sanction to impose because [Mr. Sweitzer] ha[d] no other disciplinary record and his violations were not a pattern of misconduct." *Sweitzer,* 395 Md. at 606, 911 A.2d at 452.

In that case, we focused on the nature of Mr. Sweitzer's ethical duty, his mental state, the extent of the actual or potential injury caused by the lawyer's misconduct, and any aggravating or mitigating circumstances. *See* ABA Standards, Standard 3.0; *see also* American Bar Association Lawyer's Manual on Professional Conduct 101.3001 (2003). We considered the first two factors, the nature of the ethical duty violated and the lawyer's state of mind, simultaneously, noting that Mr. Sweitzer violated MRPC 8.4(c) and (d) "by attempting to defraud the State of Maryland" through misrepresentations to the MVA to avoid the payment of the vehicle sales tax. *Sweitzer,* 395 Md. at 599–600, 911 A.2d at 448. Recognizing that a lawyer must be honest and trustworthy, we noted that Mr. Sweitzer's intentionally dishonest actions, if allowed to go

unchecked, could undermine the integrity of the legal profession. *Sweitzer,* 395 Md. at 603–04, 911 A.2d at 450–51. We concluded that Mr. Sweitzer's "conduct, intentionally deceitful and motivated by pecuniary interest, was egregious." *Sweitzer,* 395 Md. at 603, 911 A.2d at 450. Nonetheless, we did not impose the sanction of disbarment, and we did not rest that decision on whether Mr. Sweitzer had been criminally charged or convicted of a crime stemming from his misconduct.

As to the third factor, the amount of the actual or potential injury caused by the attorney's misconduct, we pointed out that Mr. Sweitzer "withdrew the Gift Certification Form prior to it becoming the basis for a loss by the State of the transfer tax moneys. . . ." *Sweitzer,* 395 Md. at 604, 911 A.2d at 451. We balanced Mr. Sweitzer's "attempt to defraud the State of what was a relatively modest amount . . . against the injury to the public." *Sweitzer,* 395 Md. at 605, 911 A.2d at 451. We did not assess that the injury to the public was so great as to warrant a disbarment. Finally, we considered mitigating circumstances and noted that Mr. Sweitzer did not have a prior disciplinary record and that his violations were not the result of a pattern of misconduct. *Sweitzer,* 395 Md. at 605, 911 A.2d at 451.

Applying the same Standards that we recognized in *Sweitzer* to the present case, and recognizing that we must consider the facts and circumstances of each case to determine the appropriate sanction, I would hold, in the present case, that an indefinite suspension is a more appropriate sanction than disbarment. Not unlike Mr. Sweitzer, Mr. Garcia knowingly misrepresented his authority to sign the employment certification letter. Although he did not know all the facts concerning whether the statements contained in the employment certification letter were true, Mr. Garcia's decision to sign the letter as though he were the employer was, nonetheless, deceptive. Mr. Garcia, however, took steps to withdraw from the conspiracy and attempted to persuade his law partner to withdraw the visa application. "[A] conspirator's membership in a conspiracy continues until he withdraws from the conspiracy by affirmative action." *United States v. Urbanik,* 801 F.2d 692,

697 (4th Cir.1986) (noting, however, that "[w]ithdrawal must be shown by evidence that the former conspirator acted to defeat or disavow the purpose of the conspiracy"). Although, in the present case, the Government discovered the false statement prior to Mr. Garcia's request to withdraw the application, the Government did not issue the visa to N.V. and the applicant did not benefit from his or Mr. Garcia's misdeeds.

In the present case, the injury to the public, in effect, was reduced when no visa was issued or procured by fraud. Though a crime was committed, Mr. Garcia was punished for his complicity in the conspiracy. In that regard, the injury to the public was rectified. Penultimately, two other factors played a significant role in producing Mr. Garcia's criminal behavior. Although he knew it was wrong and fraudulent to sign the certification letter as he did, Mr. Garcia's motive was to protect his client's interest in submitting the visa application before the termination of the amnesty deadline. *See Attorney Grievance v. Breschi*, 340 Md. 590, 602, 667 A.2d 659, 665 (1995) (noting that motive plays a large part in the Court's determination of the appropriate sanction). In that regard, Mr. Garcia's conduct was not as egregious as Mr. Wingerter's acts to conceal his involvement in hundreds of fraudulent immigration applications over a period of four years. *Wingerter*, 400 Md. at 219–20, 929 A.2d at 50–51 (holding that the attorney failed to prove any extenuating circumstances that would support a sanction less than disbarment). In *Wingerter*, Respondent made no attempt to withdraw from the conspiracy or try to minimize the harm done to the public.

Finally, the mitigating factors in this case also support suspension, not disbarment. Here, Respondent demonstrated remorse throughout the course of the underlying criminal proceedings and these disciplinary proceedings. *See Attorney Grievance v. McCulloch*, 397 Md. 674, 689, 919 A.2d 660, 668 (2007) (identifying remorse as a factor when declining to disbar Ms. McCulloch for misappropriating funds). Both the criminal court judge and the hearing judge in this case commented on Mr. Garcia's cooperation and genuine remorse

for his misconduct. There is no prior history of disciplinary action ever initiated against Mr. Garcia. *See Sweitzer,* 395 Md. at 605–06, 911 A.2d at 451–52 (identifying Mr. Sweitzer's lack of disciplinary history when declining to disbar him for his misrepresentations); *see also Floyd,* 400 Md. at 259, 929 A.2d at 74 (identifying Ms. Floyd's lack of disciplinary history when suspending her for "deceitful conduct"); *McCulloch,* 397 Md. at 689, 919 A.2d at 669 (identifying Ms. McCulloch's lack of disciplinary history when declining to disbar her for misappropriating funds). Mr. Garcia's attorney argues, before this Court, that Mr. Garcia neither "intend[ed] to profit personally from his actions," nor "benefit[ted] personally from the conduct," and he did not try to cover up some other wrongdoing. In other words, although the law firm that employed Mr. Garcia may have been paid for representing N. V., Mr. Garcia "did not anticipate an economic benefit because he thought that the firm was doing a friend of Ms. Quidilla a favor." In addition, counsel argues that Mr. Garcia's misconduct is isolated and that his participation in the underlying scheme was as a "minor" participant. *See Sweitzer,* 395 Md. at 605–06, 911 A.2d at 451–52 (identifying Mr. Sweitzer's lack of a pattern of misconduct when declining to disbar him); *see also Floyd,* 400 Md. at 259, 929 A.2d at 74 (identifying Ms. Floyd's lack of a pattern of misconduct when suspending her). Here, by comparison to *Sweitzer,* there are more mitigating factors, and, like *Sweitzer,* there is no pattern of misconduct present that would serve as an aggravating factor.

Accordingly, I dissent. Chief Judge Bell and Judge Murphy concur with the views expressed herein.