936 A.2d 854

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Thomas Ford KALIL.

Misc. Docket (Subtitle AG) No. 27 Sept. Term, 2006.

Court of Appeals of Maryland.

Dec. 6, 2007.

Dolores O. Ridgell, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, Atty. Grievance Com'n of Maryland), for petitioner.

F. Patrick Kelly, Rockville, for respondent.

ARGUED BEFORE BELL, C.J., RAKER, HARRELL, BATTAGLIA, JOHN C. ELDRIDGE (Retired, Specially Assigned), ALAN M. WILNER (Retired, Specially Assigned) and DALE R. CATHELL (Retired, Specially Assigned), JJ.

JOHN C. ELDRIDGE, Judge (Retired, Specially Assigned).

The Attorney Grievance Commission, by Bar Counsel, filed a petition for disciplinary action against the respondent, Thomas F. Kalil, on July 21, 2006. In the petition, the Attorney Grievance Commission alleged violations of Rules 3.3 [1] and 8.4 [2] of the Maryland Lawyers' Rules of Professional Conduct. The matter was referred to Judge Durke G. Thompson of the Circuit Court for Montgomery County for a hearing and factual findings pursuant to Maryland Rules 16–

---

**1.** Rule 3.3 of the Maryland Rules of Professional Conduct provides, in relevant part, as follows:

"**Rule 3.3 Candor Toward the Tribunal.**

(a) A lawyer shall not knowingly:

(1) make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

(2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;

(3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or

(4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures."

**2.** The relevant portions of Rule 8.4 of the Maryland Rules of Professional Conduct provide as follows:

"**Rule 8.4 Misconduct.**

"It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

\* \* \*

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice."

752(a) and 16–757(c).[3]

The facts, as found by Judge Thompson, are summarized as follows. On December 20, 1983, Thomas Kalil was admitted to the Maryland Bar. He is not a member of the Bar of any other state or the District of Columbia. Kalil does not practice law and has never maintained an office for the practice of law. For the time period relevant to this matter, he worked for the United States Department of Agriculture as an Assistant to the Deputy Administrator of the Farm Loan Programs.

The Department of Agriculture suspended Kalil for 14 days without pay, and Kalil believed that the suspension was retaliation for what he claimed was "whistleblowing." Kalil appealed his suspension to the Merit Systems Protection Board (MSPB) under the Whistleblower Protection Act, 5 U.S.C. § 2301(b)(9). Administrative Judge Thomas P. Cook presided over a hearing on December 10, 2004, to determine whether the Department of Agriculture had, in fact, retaliated against Kalil in violation of the Whistleblower Protection Act and whether the 14-day suspension was meritorious.

Judge Cook issued an Initial Decision finding partially in favor of Kalil and partially against him. The decision upheld Kalil's suspension and loss of pay. Kalil appealed the Initial Decision to the full Board, which affirmed Judge Cook's decision. Subsequently, Kalil filed an action for judicial re-

---

**3.** Maryland Rules 16–752(a) and 16–757(c) state as follows:
"**Rule 16–752. Order designating judge.**
"(a) **Order.** Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discover and setting dates for the completion of discover, filing of motions and hearing."
"**Rule 16–757. Judicial hearing.**
\* \* \*
"(c) **Findings and conclusions.** The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law."

view in the United States Court of Appeals for the Federal Circuit which affirmed the MSPB decision.

Kalil believed that Judge Cook and some of the witnesses at his MSPB hearing committed acts that breached the applicable rules governing attorney conduct and that he had an ethical obligation to report such acts. While his judicial review action was pending, Kalil called the MSPB Washington Regional Office on at least three occasions. On June 21, 2005, a paralegal specialist for the office, Sheila Stanton, answered a call from a person who identified himself as "John Ford" and who asked to speak with "Tom Cook, an MSPB Judge." The caller, who was in fact Kalil, indicated that the phone call concerned a personal matter. Stanton put the call on hold and contacted Judge Cook who asked her to transfer the call to his voicemail, which she did. Judge Cook testified that he is reluctant to answer the phone because a large number of cases before him involve *pro se* litigants who seek to argue their cases *ex parte*. In addition, Judge Cook does not speak to a litigant after his or her case has been decided.

Soon after, Stanton answered another call, but the caller did not identify himself. Stanton, however, recognized the caller to be the same person who earlier had identified himself as "John Ford." This time, the caller asked Stanton whether Judge Cook was a member of the Bar of the District of Columbia. Judge Cook is a member of the California Bar and is not admitted to the District of Columbia Bar. Stanton informed the caller that she was not sure and that he would have to ask Judge Cook. She then forwarded the call to Judge Cook's voicemail. The transcript of the voicemail reads as follows:

"Yes, Judge Cook, this is Thomas Cahill. If you could contact me at [telephone number] I would appreciate it. I have a technical question I have to obtain information from you. This is not related to the case, but I'm calling on behalf of D.C. Bar Counsel. Thank you."

When Judge Cook listened to his voicemail, he believed the voice to be that of Thomas Kalil and not a "Kayhill or Cahill." Judge Cook wrote a memorandum to memorialize the call.

Shortly thereafter, Stanton answered a third call from Kalil who this time identified himself as "Thomas Cahill." "Thomas Cahill" inquired whether P.J. Winzer, who is the Regional Director of the Washington Regional Offices and who also serves as the Chief Administrative Judge of the MSPB, was a member of the Bar of the District of Columbia. Placing the call on hold, Stanton contacted Judge Winzer, informed her about the inquiry, and also related that the same person had called earlier asking similar questions about Judge Cook. Judge Winzer accepted the call and informed the caller that she did so because of the nature of the bar status inquiry. When the caller stated that he was sure Judge Winzer was a member of the Bar of the District of Columbia, Judge Winzer answered that she was not. After further questioning, Judge Winzer stated that she was a member of the California Bar. After some casual conversation, the caller indicated that he wanted information in relation to an ongoing investigation. Judge Winzer did not recognize the caller, Kalil, as a litigant before the MSPB. Once she learned the identity of the caller, she prepared a memorandum about the call.

Soon after the third telephone call, Judge Cook asked Stanton to call the number left on his voicemail. Judge Cook informed Stanton that he believed the caller was one of the former litigants who appeared before him, named Thomas Kalil. When Stanton called the number, the person answering the call identified himself as "Mr. Kalil" and indicated that she had reached either the "Farm Bureau" or "Farm Programs." Again, Kalil inquired of Stanton whether Judge Cook was a member of the Bar of the District of Columbia, and Stanton responded that she could not reveal that type of information. Kalil told Stanton that he was gathering information for a response to the D.C. Bar about violations of ethics, and, if Judge Cook did not return his call, he would consider it a refusal to respond. Stanton recognized Kalil as the same person who called three times previously and prepared a memorandum to memorialize the four conversations with him.

The memoranda of the phone calls from and conversations with Kalil were sent to the MSPB general counsel. The

incident was subsequently reported to the District of Columbia Bar Counsel and, because Kalil is not a member of the District of Columbia Bar, it was forwarded to the offices of the Maryland Attorney Grievance Commission in July 2005.

The Office of the District of Columbia Bar Counsel never employed Kalil and never authorized him to act for the Office in any capacity. Kalil had previously filed two or three complaints with the Office of the District of Columbia Bar Counsel, and it is the practice of the Office to ask complainants to provide further information. The Office does not, however, authorize or permit others to investigate complaints. The records of the District of Columbia Bar Counsel's Office do contain two letters, dated August 25, 2005, and October 4, 2005, to Kalil concerning complaints which he had previously filed. These letters asked Kalil to provide information, but they did not authorize him to act for the Office.

The records of the District of Columbia Bar Counsel's Office also contained a memorandum written on September 29, 2005, by Joe Perry, a law clerk for the Office. The memorandum concerned a conversation with Kalil in which Kalil asked Perry to speculate about the meaning of the phrase "on behalf of." The memorandum also noted that Kalil complained about Bar Counsel's referral of the MSPB complaint to the Maryland Attorney Grievance Commission. Kalil told Perry that he wanted the District of Columbia Bar Counsel to write a retraction or acknowledge that the referral was a mistake. Kalil also stated that he would sue the Office if the referral was not retracted. Kalil previously had made a similar attempt to have the MSPB complaint withdrawn. On August 10, 2005, a staff attorney memorandum stated that Kalil had demanded that someone order Wallace E. Shipp (District of Columbia Bar Counsel) to withdraw the referral of the complaint or to have Mr. Shipp disciplined for the referral.

Approximately three months after the calls to Judges Cook and Winzer, on October 14, 2005, Kalil delivered to the Office of the District of Columbia Bar Counsel the transcript of the hearing of his case before the MSPB. He included with the

transcript a document entitled "Confirmation of Delivery and Receipt." Ms. Mayfield, the office receptionist, signed and date stamped the receipt. At some point, Kalil wrote on the receipt: "As part of Dr. Thomas F. Kalil, Esq.'s continuing efforts on behalf of the District of Columbia Bar Counsel's investigation regarding disciplinary action in" three docketed complaints that he filed with Bar Counsel. Neither Judge Winzer nor Judge Cook was the subject of those complaints.

Judge Thompson found that Kalil's testimony on the nature and content of the receipt contradicted his testimony in his pretrial deposition. Testifying at his disciplinary hearing, Kalil claimed that he cleared the language on the receipt with "someone" at the District of Columbia Bar Counsel's Office. During his deposition, Kalil stated that he had read the receipt to Judith Hetherton (Senior Assistant Bar Counsel) and drafted the document with the specific concurrence of Hetherton. He later recanted that testimony and said that he did not know to whom he spoke and read the receipt.

Judge Thompson found that Kalil did not violate Rule 3.3 but did violate Rule 8.4. Judge Thompson stated as follows:

"The actions of the Respondent in this matter are largely undisputed. To understand exactly what happened and why it occurred requires some insight into the character and personality of the Respondent. During the hearing on this matter, with the Court's ability to observe the Respondent testify, it became clear that the Respondent is an intelligent career civil servant who has an inflated view of his role at the U.S. Department of Agriculture and his public responsibilities. He is also hampered by his selective interpretations of facts and their application to his situation together with an inability, on occasion, to acknowledge that he is wrong about matters with which he is dealing. An apt description of the Respondent is as an unappreciated gad fly. At times during his testimony, Respondent was argumentative or non-responsive to the questions asked, not because he was evasive, but because he elected to split hairs during his answer or to try to restate the question to fit what Respondent believed was appropriate. It is the

Court's belief that this personality trait is what led to Respondent's troubles with his employer, the MSPB, and the Office of Bar Counsel for the District of Columbia.

"The information sought by the Respondent when he made his calls to the MSPB Regional Office was a matter of public record. Apparently, Respondent was aware that his 'plan' to complain to bar authorities about the administrative law judge in his case was a risky professional undertaking. Thus, the Respondent sought to conceal his identity when making his telephone query. Perplexing is his effort to engage Chief Administrative Judge Winzer in conversation but it is apparently consistent with his belief that his multiple calls were not appreciated. However, there is little question that Respondent was not forthright with his representations to the receptionist.

"The real issue is whether Respondent's misrepresentations by phone were material, as they must have been in order to constitute a violation of MRPC 3.3, which requires a 'false statement of material fact or law to a tribunal.' It is the belief of the Court that they were not. Bar membership is a matter within the public domain and [is] publicly accountable in a regulated profession. The use of pseudonyms by the Respondent did nothing to mislead the call recipients to their detriment. Nor did the calls themselves involve anything that was before the MSPB forum. Instead the calls were an apparent prelude to the efforts by the Respondent to manipulate the grievance process in the District of Columbia.

"The actions of the Respondent do not seem to fit as a violation of MRPC 3.3. The actions of the Respondent involved a judicial forum or tribunal, but his telephone calls were not the part of any proceeding before the tribunal. The use of pseudonyms during his phone calls does not violate the rule. Far more troubling is the apparent attempt to invoke the authority of the Office of Bar Counsel while dealing with various persons at the MSPB. In these acts, it does appear that Respondent is in violation of MRPC 8.4, which prohibits a lawyer from 'engag[ing] in

conduct involving dishonesty, fraud, deceit or misrepresentation.' The Respondent represented to others that he was an agent of D.C. Bar Counsel when he made his telephone calls. The Respondent's position on these representations is, at best, inconsistent. The testimony of Respondent was that he volunteered to Bar Counsel's Office to find out about Judge Cook's Bar membership. Earlier, in his deposition, Respondent did not have any recollection of such a conversation. It was during the receipt of testimony on this point that Respondent's personality became apparent. He stresses that he was acting only for the 'benefit' of Bar Counsel, and not on behalf of Bar Counsel. Regardless of Respondent's intentions, his actions of representing that he was calling on behalf of Bar Counsel were deceitful and untrue. Thus, MRPC 8.4 has been violated.

"Petitioner asserts that the telephone calls were also a violation of Rule 8.4(d) because they were prejudicial to the administration of justice by disrupting the ordinary flow of work at the MSPB. Petitioner's view of the facts and interpretation of the rule are erroneous. Factually, the calls were minimally intrusive and there was no evidence that disruption of the MSPB or its work occurred. Further, something more than the three telephone calls, two of which were very brief, would be needed to constitute a rule violation."

## II.

The petitioner Attorney Grievance Commission filed two exceptions to Judge Thompson's findings of fact and conclusions of law. First, the Commission excepts to Judge Thompson's conclusion that Kalil's use of pseudonyms did not violate Rule 8.4(c). According to the petitioner, "in addition to representing that he was calling on behalf of Bar Counsel, respondent also falsely represented that his name was John Ford and Thomas Cahill/Kayhill during his calls to the MSPB." Petitioner asserts that this conduct involved "dishonesty, fraud, deceit or misrepresentation" and therefore violated Rule 8.4(c).

In addition, the Commission excepts to Judge Thompson's findings and conclusion that Kalil did not violate Rule 8.4(d) and argues that Kalil's representation, that he was acting on behalf of the District of Columbia Bar Counsel, is conduct prejudicial to the administration of justice. This conduct, according to the petitioner, "could negatively impact on the image· or perception of the legal profession and engender disrespect for the legal profession" and therefore violates Rule 8.4(d). In support of its argument, the petitioner relies on *Attorney Grievance Commission of Maryland v. Painter*, 356 Md. 293, 306–07, 739 A.2d 24, 31 (1999).

We overrule the Attorney Grievance Commission's exceptions. With respect to Rule 8.4(c), Judge Thompson found that Kalil's use of pseudonyms in his conversations with Stanton and Judge Winzer were not material and "did nothing to mislead the call recipients to their detriment." The record does not show that Judge Thompson's findings of fact pertaining to the use of pseudonyms were clearly erroneous, and these facts supported the conclusion that Kalil's use of alternate names did not rise to the level necessary for a violation of Rule 8.4(c). *Attorney Grievance Commission of Maryland v. Robertson*, 400 Md. 618, 629, 929 A.2d 576, 583 (2007) ("When the factual findings are not clearly erroneous and the conclusions drawn from them are supported by the facts found, exceptions to conclusions of law will be overruled"); *Attorney Grievance Commission of Maryland v. Mba–Jonas*, 397 Md. 690, 700, 919 A.2d 669, 675 (2007); *Attorney Grievance Commission of Maryland v. Guida*, 391 Md. 33, 50, 891 A.2d 1085, 1095 (2006). We also note that Judge Thompson did conclude that Kalil's representation that he was working "on behalf of" Bar Counsel violated Rule 8.4(c).

Likewise, Judge Thompson's findings that Kalil's telephone calls "were minimally intrusive" and that they did not disrupt the work of the MSPB were not clearly erroneous. These findings supported the conclusion that the calls did not result in "conduct that is prejudicial to the administration of justice" as is required for a violation of Rule 8.4(d). Furthermore, the conduct at issue here is strikingly different from the conduct

in *Attorney Grievance Commission of Maryland v. Painter, supra,* relied on by Bar Counsel. In Painter, the Court held that the subject attorney's conduct, which "consisted of abusing, physically, verbally, and psychologically, his wife and his children" for a period of sixteen years violated Rule 8.4(d). *Attorney Grievance Commission of Maryland v. Painter, supra,* 356 Md. at 300, 302, 739 A.2d at 28, 29. Kalil's conduct certainly does not compare to that in *Painter.*

Kalil also filed exceptions to Judge Thompson's findings of fact and conclusions of law. First, Kalil excepts to Judge Thompson's finding that some of Kalil's testimony at his hearing contradicted statements in his deposition. Specifically, Kalil points to Judge Thompson's finding that the "testimony of Respondent was that he volunteered to Bar Counsel's Office to find out about Judge Cook's Bar membership. Earlier, in his deposition, Respondent did not have any recollection of such a conversation." Kalil asserts that the hearing transcript is not inconsistent with his earlier deposition testimony that he could not recall the conversation.

Next, Kalil excepts to the factual finding that he "represented to others that he was an agent of D.C. Bar Counsel when he made his telephone calls." According to Kalil, the transcript contains no instance where a witness claimed that Kalil used the word "agent." Rather, Kalil points to the evidence showing that he used the words "on behalf of Bar Counsel" when making the telephone calls, and Kalil asserts that the phrase "on behalf of" is appropriate "when a person provides assistance to another." Because his testimony did not contradict statements in his deposition, and because he never claimed to be an "agent" of the District of Columbia Bar Counsel, Kalil asserts that Judge Thompson erred in concluding that he violated Rule 8.4(c).

Finally, Kalil excepts to Judge Thompson's failure to make any findings "regarding the presence or lack of mitigation." In this regard, Kalil chiefly points to evidence at his disciplinary hearing concerning the aid he provided to Mohammed Al Rehaief. Mr. Al Rehaief was an attorney and citizen of Iraq

who provided information contributing to the recovery of a United States Army soldier, Jessica Lynch. Kalil helped to bring Mr. Al Rehaief to the United States and spent approximately $30,000 to construct an apartment in his basement as a home for the Al Rehaief family. Mr. Al Rehaief testified for Kalil at his disciplinary hearing.

Kalil also emphasizes that he has no disciplinary history and "at all times relevant hereto, was motivated by an intent to report perceived disciplinary violations by other attorneys." Furthermore, he asserts that he "cooperated throughout the disciplinary process and disclosed all information requested by the appropriate disciplinary authorities as demonstrated by the massive amounts of material he submitted to Bar Counsel in both Maryland and the District of Columbia." In addition, Kalil states that the record reflects that he has expressed regret for the consequences of his actions.

We also overrule Kalil's exceptions. Regarding his first exception, we determine that Judge Thompson accurately described Kalil's testimony at his hearing. The hearing transcript reveals that Kalil testified that he did in fact volunteer to District of Columbia Bar Counsel that he would investigate Judge Cook's bar membership. Specifically, the transcript contains the following exchange during Kalil's direct examination (emphasis added):

"A. And the Office of Bar Counsel asked me whether I had the intent of reporting Judge Cook, as well? And I said I didn't. It was my understanding that you cannot report a judge to Bar Counsel.

"Q. Okay, and what was the response?

"A. I was told that ... because he's an administrative judge, that you can, and I was, as I recall, I was asked what bar he was with? I said, I don't know but *I'll be glad to find out.*"

The above-quoted testimony is inconsistent with his deposition testimony that he had no recollection of the conversation.

 Furthermore, Kalil's exception regarding his representation that he was calling "on behalf of Bar Counsel" is

without merit. Whether Kalil intended to deceive the recipients of his calls or misrepresent himself does not alter Judge Thompson's finding and conclusion that, "[r]egardless of Respondent's intentions, his actions of representing that he was calling on behalf of Bar Counsel were deceitful and untrue." Judge Thompson's factual finding regarding the manner in which Kalil represented himself to the MSPB is not clearly erroneous, and the conclusion of law that Kalil violated Rule 8.4(c) is supported by the record.

Finally, we overrule Kalil's exception to Judge Thompson's lack of mitigation findings. Kalil has not demonstrated that Judge Thompson committed clear error in this regard.

### III.

The petitioner asserts that the appropriate sanction to impose, in light of Kalil's dishonest conduct, is disbarment. Kalil argues that no sanction is appropriate because he lacked an intent to deceive and "has demonstrated a lifetime of public service." In considering a sanction, it is appropriate to weigh the nature and gravity of the violations as well as the intent with which they were committed. *Attorney Grievance Commission of Maryland v. Robertson, supra,* 400 Md. at 642, 929 A.2d at 590; *Attorney Grievance Commission of Maryland v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997). Here we note that the gravity of Kalil's violations is minimal and that his intention, although misguided, was not to deceive. The proper sanction, therefore, is a reprimand.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16-761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST THOMAS FORD KALIL.*