981 A.2d 1234

**ATTORNEY GRIEVANCE COMMISSION of Maryland**

v.

**Charles S. RAND.**

**Misc. Docket AG No. 27, Sept. Term, 2008.**

Court of Appeals of Maryland.

Oct. 8, 2009.

Raymond A. Hein, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, Atty. Grievance Com'n of Maryland), for Petitioner.

Alan M. Wright, Sandy Spring, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

HARRELL, J.

The Attorney Grievance Commission ("Petitioner"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action against Charles S. Rand ("Respondent"), charging him with professional misconduct arising out of his representation of Alison Welles Snowden in a divorce action. Petitioner charged Respondent with violating Rules 4.4(a) (Respect for Rights of Third Persons)[1] and 8.4(a) and (d) (Misconduct)[2] of the Maryland Rules of Professional Conduct ("MRPC").[3]

We referred the matter to the Honorable Mary Beth McCormick of the Circuit Court for Montgomery County to

1. MRPC 4.4(a) provides:

   In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that the lawyer knows violate the legal rights of such a person.

   Petitioner indicated at the evidentiary hearing before Judge McCormick that it alleged that Respondent violated the second part of MRPC 4.4(a), "a lawyer shall not . . . use methods of obtaining evidence that the lawyer knows violate the legal rights of [a third person]."

2. MRPC 8.4(a) and (d) provide:

   It is professional misconduct for a lawyer to:
   (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

   \* \* \*

   (d) engage in conduct that is prejudicial to the administration of justice. . . .

3. Petitioner argued to the hearing judge that Respondent's attempt to violate MRPC 4.4(a) constituted a violation of MRPC 8.4(a). This was the sole predicate for the alleged MRPC 8.4(a) violation.

conduct an evidentiary hearing and render findings of fact and recommended conclusions of law with regard to the alleged violations. Judge McCormick held the evidentiary hearing on 12 February 2009. On 25 March 2009, she filed written Findings of Fact and Conclusions of Law, dated 20 March 2009.

## The Findings of Facts

Respondent was admitted to practice law in Maryland in 1973. He is also a member of the District of Columbia Bar. He maintains a law office in Rockville, Maryland. In May 2005, Alison Welles Snowden retained Respondent to represent her in a divorce action against her then husband, Martin Alan Snowden. Respondent entered his appearance on 14 June 2005. Prior to retaining Respondent, Ms. Snowden, also an attorney, had filed a Complaint for Absolute Divorce in the Circuit Court for Montgomery County. Allen J. Kruger, Esquire, represented Mr. Snowden. Mr. Snowden filed an Answer to the Complaint and a Counter–Complaint for Absolute Divorce on 7 June 2005. Both parties sought alimony, spousal support, and child support.

In preparation for trial, Respondent sought production of Mr. Snowden's mental health treatment records from various providers, including the Priory Hospital in London, England. Kruger responded with a Motion for Protective Order and Sanctions on 25 August 2005. Respondent, in turn, filed an opposition and a request for an order compelling production of the records. After a hearing before the Honorable Ann S. Harrington on 11 January 2006, the Circuit Court ordered that Mr. Snowden sign a release for the mental health records.[4] The court also ordered that "counsel shall draft a Confidentiality Agreement to limit dissemination of records only to counsel and experts scheduled to testify on issues of alimony and need for support. Plaintiff is prohibited from using records for any other purposes."

---

4. This Order was entered on the docket on 23 January 2006.

Respondent drafted the Confidentiality Agreement (sometimes referred to hereafter as the "Agreement"). The Agreement provided that the Priory Hospital records "are recognized as being highly private, personal and confidential in nature and any dissemination of such is to be carefully limited, avoided and protected by Plaintiff and her counsel." Paragraph 3(e) of the Agreement detailed Respondent's obligations with respect to Mr. Snowden's mental health records at the conclusion of the divorce litigation:

> At the conclusion of the trial-level proceedings and final disposition of the issues to which the Records relate or pertain (Alimony, spousal support, etc.), Plaintiff's counsel shall retain an original copy of the Records which he shall place in a sealed envelope in Plaintiff's file with the within [sic] Agreement and all attachments taped to the exterior thereof, surrounded by appropriate warnings that the sealed envelope contains highly-confidential information. He shall then provide Defendant's counsel with all other copies in his possession together with a list of those persons who received all or a portion of the Records and whether such copies were returned or retained by such person(s). He shall also require all persons to whom he has provided copies to return same to him. Plaintiff's counsel shall destroy all such records immediately after the case reaches a final conclusion, including appeals.

On 5 April 2006, all parties and counsel signed the Agreement. Mr. Snowden thereafter signed the release and Respondent received a copy of Mr. Snowden's records from the Priory Hospital.

On 30 October 2006, the day the Snowdens' case was scheduled for trial, the parties entered into an agreement, placed on the record, as to all issues of property. The Circuit Court granted a Judgment of Absolute Divorce to the parties and directed counsel to submit an appropriate order. Judge S. Michael Pincus signed the submitted order on 12 December 2006, which was entered on 19 December 2006. The Judgment of Absolute Divorce provided:

UPON CONSIDERATION of the pending pleadings herein; and this matter having come before the Court for hearing on the merits on October 30, 2006; and both parties and their respective counsel having appeared; and *it having been represented to the Court that an agreement on all outstanding issues had been reached,* which agreement was read into the record, affirmed by each party in open Court and thereafter made binding upon each party.

(Emphasis added by hearing judge in her written findings of facts and conclusions in the present case).

The final recital in the Judgment of Absolute Divorce provided "that all prayers for relief by either party, except as provided in this Judgment of Absolute Divorce, are hereby denied." Nevertheless, Respondent informed Kruger on 9 December 2006 that he had asked Karen Doherty, another attorney, to become involved in the case and that she would be reviewing Mr. Snowden's mental health records. Kruger responded that the case was resolved and, thus, the Agreement required Respondent to destroy or return the medical records and "demanded an immediate explanation" for Respondent's continued retention of them. Respondent did not reply timely to Kruger's demand. According to Respondent's testimony before the hearing judge in the present case, he believed there remained unresolved issues because Mr. Snowden had not allowed Ms. Snowden to purchase his interest in the marital home, as provided for in the Judgment of Absolute Divorce. A series of motions filed by each party and unanswered letters from Kruger to Respondent ensued. Judge McCormick summarized these events as follows:

In January and February 2007, Respondent filed motions relating to Mrs. Snowden's efforts to complete a buyout of Mr. Snowden's interest in the marital home. In a January 26, 2007 letter, Mr. Kruger suggested that the parties select an appraiser to value the home. Respondent accepted this proposal by handwritten note on January 26, 2007.

On February 27, 2007, Respondent filed an Emergency Motion to Enforce Settlement Agreement. According to the motion, settlement on the marital home was to have

taken place that day, but Mr. Snowden had not yet signed or produced the deed.

On March 4, 2007, Mr. Kruger wrote a letter to Respondent discussing marital bills, equity in the marital home and the signing of the deed. At the end of the letter, Mr. Kruger made another request, advocating the return of Mr. Snowden's records. Again on April 14, 2007, Mr. Kruger wrote to Respondent, addressing money issues and difficulties stemming from the Judgment of Divorce. At the end of that letter, Mr. Kruger reiterated his plea to have Mr. Snowden's medical records returned. On May 18, 2007, Mr. Kruger made another demand to have the documents provided under the Confidentiality Agreement; and again Respondent failed to respond.

On August 17, 2007, a Motion to Join Charles Rand as a Third Party Defendant was filed in the *Snowden v. Snowden* litigation. The asserted basis for this motion was Respondent's refusal to abide by the terms of the Confidentiality Agreement. That motion was denied and followed by a Motion for Contempt and to Enforce Confidentiality Agreement, wherein Mr. Snowden was named as the sole defendant.

(internal citations omitted).

On 13 November 2007, Respondent finally responded to Kruger's letters requesting compliance with the Agreement and returned Mr. Snowden's medical records. In that letter, "Respondent claimed that he was not satisfied that the referenced matter had reached 'finality.' Respondent suggested that the medical records be placed in the Court registry due to the pending litigation in *Chesters v. Snowden*." [5] He included a subpoena duces tecum for Mr. Snowden to produce the medical records for use in the *Chesters* litigation. Respondent

---

**5.** According to the Petition for Disciplinary or Remedial Action, the case captioned *Rosemary Chesters, et al. v. Alison Welles Snowden,* Case No. 269865–V, in the Circuit Court for Montgomery County, was a collateral case in which Respondent represented Ms. Snowden against members of Mr. Snowden's family living in England. Petitioner alleges that Mr. Snowden was not a party to that action.

also advised Kruger that the only other copies of the records were provided to the vocational expert, Kathleen Sampeck, and Ms. Snowden. At the evidentiary hearing before Judge McCormick, Respondent testified that his motivation for sending the 13 November 2007 letter and returning the records was that Bar Counsel had contacted him with regard to Mr. Snowden's medical records. He further testified that he determined, at that point, that "these records are not worth it [presumedly referring to the motions filed in the divorce case and Bar Counsel's investigation]."

On 12 December 2007, Respondent sent a letter to Kruger enclosing sworn statements from both Sampeck and Doherty stating that they had not retained copies of Mr. Snowden's mental health records.

On 29 February 2008, Master Charles Cockerill of the Circuit Court denied Mr. Snowden's contempt motion against Respondent and request for attorney's fees. At the motions hearing on 11 February 2008, Master Cockerill, in his oral findings and recommendations, stated that he denied the contempt motion because Respondent had returned the records to Kruger.

The hearing judge in the present case found, by clear and convincing evidence, that the parties resolved all outstanding issues in *Snowden v. Snowden* on 30 October 2006 when they placed an agreement on the record and therefore a " 'final disposition' of the issues to which the confidential Priory Hospital records related" was reached on 19 December 2006 when the Circuit Court entered the Judgment of Absolute Divorce. Judge McCormick did not find credible Respondent's claim that child support remained an open issue. She found further that, pursuant to the Agreement and the 11 January 2006 order signed by Judge Harrington, the mental health records were available to Respondent and Ms. Snowden solely for "review in connection with issues of alimony and spousal support" and not for use in connection with any outstanding child support dispute. Respondent "never raised the issue of child support as a justification for keeping the

records as a response to any of Mr. Kruger's letters during the period from December 2006 to May 2007." Judge McCormick found that Respondent offered that justification only after opposing counsel filed a motion seeking to compel Respondent to comply with the Agreement.

Finally, the hearing judge found there was clear and convincing evidence that Respondent's "primary motive for retaining the confidential Priory Hospital records of Martin Snowden after October 30, 2006 was to have the records available for review and use as evidence in connection with his separate representation of Mrs. Snowden in the *Chesters v. Snowden* case." Judge McCormick found this proposed use "was beyond the scope permitted by Judge Harrington's Order in *Snowden v. Snowden* and in violation of the terms of the Confidentiality Agreement executed pursuant to that court order." [6]

## Conclusions of Law

Despite her findings of fact, the hearing judge concluded that Respondent did not violate MRPC 4.4(a) by attempting "to use a method of obtaining evidence that the lawyer knows violates the legal rights of another person." Judge McCormick concluded that "Respondent did not obtain or attempt to obtain the mental health treatment records illegally or in any attempt to violate the legal rights of Mr. Snowden. When the records were obtained, Respondent was acting in furtherance of his client's divorce case."

She resolved, however, that Respondent engaged in conduct prejudicial to the administration of justice in violation of MRPC 8.4(d) by retaining the mental health records beyond the authorized time and events stated in the Confidentiality Agreement and by failing to respond to repeated reasonable requests from Kruger for their return. The hearing judge reasoned that:

---

**6.** There is no indication in the record that Respondent actually used or attempted to use the records in the *Chesters* case.

Respondent retained his copy of the confidential records long after the conclusion of the trial-level proceedings and the final disposition of the issues to which the records pertained. Judge Harrington's January 11, 2006 Order required a Confidentiality Agreement which limited dissemination of records only to counsel and experts *scheduled to testify on issues of alimony and need for support.* Respondent was prohibited from using Mr. Snowden's mental health treatment records for any other purpose. Respondent's explanation that the records were necessary to determine child support as an open issue does not fit within the narrow permission granted in the January 11, 2006 Order.

This Court finds by clear and convincing evidence that the Respondent's primary motivation in retaining the records was his recognition it would be difficult to obtain these same records for the *Chesters v. Snowden* case. Indeed, much was difficult between these parties and counsel. Both parties' counsel threatened each other with being named in lawsuits. Nonetheless, Respondent's actions prove that the records were not going to be easily returned, given the initial difficulty in obtaining them.

This situation was compounded by the Respondent's silence in the face of four written requests for the return of the records. Further, if Respondent's motivation was to address child support in the future, there would have been correspondence or communication to that effect and Court assistance would have been utilized.

Respondent's failure to comply with Paragraph 3(e) of the Confidentiality Agreement and his failure to respond to opposing counsel's repeated requests for compliance over a period of several months demonstrated a "lack of civility, good manners and common courtesy," which "tarnishes the image of what the bar stands for." *Attorney Grievance Commission v. Link,* 380 Md. 405, 426, 844 A.2d 1197, 1210 (2004) (citing *In the Matter of McAlevy,* 69 N.J. 349, 354 A.2d 289, 291 (1976)).

Certainly the refusal to respond to legitimate requests by counsel with respect to the return of the medical records

does not equate with the bad behavior in the *Link* and *McAlevy* cases. The Court acknowledges Respondent's sentiment that he did not want to engage in an expensive and probably useless paper campaign. However, the refusal to timely return the records without *any* explanation constitutes conduct that is prejudicial to the administration of justice. The records were obtained in good faith and in the zealous representation of a client's case. The Court accommodated the Respondent's need in the divorce case by permitting the Respondent to see those highly private records subject to a Confidentiality Agreement crafted by the parties themselves. To then retain those records in violation of the Court sanctioned Confidentiality Agreement is conduct prejudicial to the administration of justice.

(Emphasis in original).

## Standards of Review

" 'This Court has original and complete jurisdiction over attorney discipline proceedings' in Maryland." *Attorney Griev. Comm'n v. Thomas,* 409 Md. 121, 147, 973 A.2d 185, 200 (2009) (quoting *Attorney Griev. Comm'n v. Uguuonye,* 405 Md. 351, 368, 952 A.2d 226, 235 (2008)). "We accept a hearing judge's findings of fact unless we determine that they are clearly erroneous." *Attorney Griev. Comm'n v. Guida,* 391 Md. 33, 50, 891 A.2d 1085, 1095 (2006) (citing *Attorney Griev. Comm'n v. Stolarz,* 379 Md. 387, 397, 842 A.2d 42, 47 (2004) and *Attorney Griev. Comm'n v. Culver,* 371 Md. 265, 274, 808 A.2d 1251, 1256 (2002)). "All proposed conclusions of law by the hearing judge, however, are subject to *de novo* review by this Court." *Thomas,* 409 Md. 121, 147, 973 A.2d 185, 201 (citing *Uguuonye,* 405 Md. at 368, 952 A.2d at 236).

## The Exceptions and Recommended Sanction

Petitioner took no exceptions to the hearing judge's findings or conclusions. As to sanction, Petitioner urges this Court to issue a reprimand to Respondent, in light of Respondent's refusal to acknowledge the wrongful nature of his conduct, his

substantial experience as a practitioner, and the absence of a prior disciplinary record.

Respondent filed written exceptions to Judge McCormick's findings of facts and conclusions of law. His first and third exceptions are directed to the conclusion that his failure to respond to Kruger's many requests for the return of Mr. Snowden's medical records constituted conduct prejudicial to the administration of justice. Respondent argues that presently an attorney in Maryland does not have an enforceable ethical duty to make timely answer to letters of opposing counsel. Respondent contends the situation in this case better is left to the relevant dispute resolution procedures provided for in the Maryland Rules. Respondent foresees adoption of the conclusions of law of the hearing judge as opening "a bottomless Pandora's Box." "Every day-to-day" litigation decisions would be subjected to the possibility of an ethics violation. He contends that neither Bar Counsel nor the hearing judge "offered any explanation how the Respondent's conduct prejudiced the administration of justice."

Respondent's second exception is to the conclusion that Respondent's retention of the medical records beyond the time specified in the Agreement was prejudicial to the administration of justice. According to Respondent, his failure to respond to opposing counsel and retention of the records was, in the context of the contentious nature of the divorce litigation, "ordinary."

Respondent's fourth exception is to the hearing judge's finding that his primary motive for retaining the records was to have the records available for use in the *Chesters* litigation. He argues that his "true motive was irrelevant, unaccompanied as it was by unlawful or unethical *actions*, actual violation of Judge Harrington's Order or the Confidentiality Agreement, or violation of the confidentiality of the subject records."

Finally, Respondent takes exception to the hearing judge's conclusion that he violated Maryland Rule 16–701. In reaching her conclusion that Respondent violated MRPC 8.4(d), the hearing judge stated that Respondent engaged in professional

misconduct as defined in Rule 16–701(i).[7] Notwithstanding the hearing judge's reference to Rule 16–701, she did not find a violation of that Rule. The proper understanding of this reference is that she referred to Rule 16–701(i) as a way of responding to Respondent's argument that the charged conduct was not sanctionable. As a definitional provision, Rule 16–701 is not capable of being "violated." Thus, we overrule this exception summarily.

### Analysis of Remaining Exceptions[8]

■ Essentially we are left to resolve Respondent's exceptions to the hearing judge's conclusion relative to the MRPC 8.4(d) charge. Based upon our *de novo* review, we conclude that Respondent did not violate MRPC 8.4(d). The hearing judge found that Respondent's failure to return timely the records without any explanation to opposing counsel for the delay and the retention of the records in violation of the Agreement was conduct prejudicial to the administration of justice. Although we do not condone Respondent's conduct in this case, we are not prepared to declare, on this record, that

---

**7.** Rule 16.701(i) provides:

"Professional misconduct" or "misconduct" has the meaning set forth in Rule 8.4 of the Maryland Lawyers' Rule of Professional Conduct, as adopted by Rule 16–812. The term includes the knowing failure to respond to a request for information authorized by this Chapter without asserting, in writing, a privilege or other basis for such failure.

**8.** The hearing judge did not render a conclusion of law with regard to the alleged MRPC 8.4(a) violation. Presumably, because she concluded that Respondent did not violate MRPC 4.4(a), she concluded impliedly that he did not violate MRPC 8.4(a). *See supra* note 3.

Judge McCormick found that there was insufficient evidence to show that Respondent violated MRPC 4.4(a). Petitioner did not file an exception to this finding, and we accept the finding. Under MRPC 4.4(a), Bar Counsel charged Respondent with "us[ing] methods of obtaining evidence that the lawyer knows violates the legal rights of such a person." Respondent obtained the medical records legally. Although he may have *retained* the records in violation of the Confidentiality Agreement, MRPC 4.4(a) does not cover such conduct. Therefore, we agree that Respondent did not violate MRPC 4.4(a).

this incident is sanctionable conduct under the MRPC 8.4(d). As a result, we sustain Respondent's relevant exceptions.

Generally we have found a broad range of conduct to be prejudicial to the administration of justice. *See Attorney Griev. Comm'n v. Link*, 380 Md. 405, 427, 844 A.2d 1197, 1210 (2004). In general, an attorney violates MRPC 8.4(d) when his or her conduct impacts negatively the public's perception or efficacy of the courts or legal profession. *Attorney Griev. Comm'n v. Garcia*, 410 Md. 507, 520, 979 A.2d 146, 154 (2009); *Attorney Griev. Comm'n v. Rose*, 391 Md. 101, 111, 892 A.2d 469, 475 (2006) ("conduct which tends to bring the legal profession into disrepute ... is ... prejudicial to the administration of justice"); *Link*, 380 Md. 405, 427, 844 A.2d 1197, 1211 ("conduct that impacts on the image or perception of the courts or the legal profession and that engenders disrespect for the courts and for the legal profession may be prejudicial to the administration of justice") (internal citations omitted). When purely private, non-criminal conduct is implicated, the harm or potential harm must be "patent" in order for the conduct to rise to the level of conduct prejudicial to the administration of justice. *Link*, 380 Md. at 429, 844 A.2d at 1212.

Dishonest conduct by an attorney also may be prejudicial to the administration of justice. In *Garcia*, we held that disbarment was the proper sanction for, *inter alia*, a violation of MRPC 8.4(d) where the attorney filed a false document with Federal immigration authorities. *Garcia*, op. at 511–13, 528–29, 979 A.2d at 149–50, 159. *See also Attorney Griev. Comm'n v. Tanko*, 408 Md. 404, 416, 419, 969 A.2d 1010, 1016, 1020 (2009) (filing a petition for expungement with a court when the attorney knew that his client did not meet the statutory requirements for relief was misleading to the court and, thus, prejudicial to the administration of justice); *Attorney Griev. Comm'n v. Elmendorf*, 404 Md. 353, 357, 360, 946 A.2d 542, 544, 546 (2008) (adopting the hearing judge's conclusion that the attorney violated MRPC 8.4(d) where he could have given the impression to a non-client that misrepresenting

information to the court could be acceptable under certain circumstances); *Attorney Griev. Comm'n v. Granger,* 374 Md. 438, 458–59, 823 A.2d 611, 623 (2003) (failure to provide truthful information to Bar Counsel was conduct prejudicial to the administration of justice). In *Attorney Griev. Comm'n v. Alison,* 349 Md. 623, 709 A.2d 1212 (1998),[9] we also found misconduct prejudicial to the administration of justice. *Id.* at 635, 640, 642, 709 A.2d at 1218, 1220–21. We held that the hearing judge was correct in finding that filing a lawsuit against a law firm that " 'was completely without foundation' " was prejudicial to the administration of justice. *Alison II,* 349 Md. at 640, 642, 709 A.2d at 1220–21. The hearing judge found it so because the conduct " 'generated a lot of court time, unnecessary pleadings and involvement of parties for the sole purpose of harassing [one of the defendants].' " *Id.* at 640, 709 A.2d at 1220. In *Alison II,* we also held that the inclusion of a meritless count in a complaint violated MRPC 8.4(d). *Id.* at 633, 642, 709 A.2d at 1217, 1221.

We also have some found some disruptive and discourteous behavior, usually committed predominantly in court, involving court personnel, or the judicial process during the representation of a client, to be prejudicial to the administration of justice. For example, in *Attorney Griev. Comm'n v. Alison,* 317 Md. 523, 565 A.2d 660 (1989), we held that an attorney's verbal abuse of court clerks, use of offensive and vulgar language in court, resistance of a court-ordered search, harassment of his estranged wife, filing of spite charges against his estranged wife for forgery, and expletive references to police officers, was conduct prejudicial to the administration of justice. *Alison,* at 527–36, 565 A.2d at 661–63, 666. *See also Attorney Griev. Comm'n v. Mahone,* 398 Md. 257, 268, 920 A.2d 458, 464 (2007) (attorney violated MRPC 8.4(d) where he disrupted court proceedings on one occasion and walked out of the courtroom while the trial judge was render-

---

9. We shall refer to this case as *"Alison II"* as Mr. Alison was the subject of an earlier disciplinary proceeding in *Attorney Griev. Comm'n v. Alison,* 317 Md. 523, 565 A.2d 660 (1989).

ing his oral opinion from the bench on another occasion). *But see Attorney Griev. Comm'n v. Link*, 380 Md. 405, 428, 844 A.2d 1197, 1212 (2004) (attorney's uncivil and discourteous behavior was not prejudicial to the administration of justice because it was not criminal and occurred not in pursuit of the practice of law).

An attorney's inaction in a court case can be prejudicial to the administration of justice. In *Attorney Griev. Comm'n v. Tinsky*, 377 Md. 646, 651, 653, 835 A.2d 542, 545–546 (2003), an attorney's lack of action and untimely filing of a motion to strike was found to be prejudicial to the administration of justice. In *Attorney Griev. Comm'n v. Ficker*, 399 Md. 445, 454–56, 924 A.2d 1105, 1111 (2007), we concluded that where an attorney filed an entry of appearance on behalf of a client when the attorney knew he would be unable to represent the client on the hearing date and was absent from the scheduled trial was prejudicial to the administration of justice. *See also Attorney Griev. Comm'n v. Rose*, 391 Md. 101, 111, 892 A.2d 469, 475 (2006), where we determined that the attorney's failure to respond " 'promptly, completely and truthfully to Bar Counsel's requests for information, to keep his client advised of the status of the representation, and to diligently represent the complainant constitutes conduct which tends to bring the legal profession into disrepute and is therefore prejudicial to the administration of justice.' " (quoting the hearing judge's findings of facts and conclusions of law).

Even the willful failure to pay taxes may constitute a violation of MRPC 8.4(d). In *Attorney Griev. Comm'n v. Tayback*, 378 Md. 578, 590–91, 837 A.2d 158, 165–66 (2003), we held that the failure over many years to file tax returns and pay taxes was prejudicial to the administration of justice. *See also Attorney Griev. Comm'n v. Clark*, 363 Md. 169, 183, 767 A.2d 865, 873 (2001); *Attorney Griev. Comm'n v. Gavin*, 350 Md. 176, 193, 711 A.2d 193, 201–202 (1998) (attorney's willful delay in correcting tax delinquencies, spanning from two to six years from the date he became aware of them, was prejudicial to the administration of justice).

On the other side of the coin, in *Attorney Griev. Comm'n v. Alison II*, 349 Md. 623, 709 A.2d 1212 (1998), *Attorney Griev. Comm'n v. Kalil*, 402 Md. 358, 936 A.2d 854 (2007), and *Attorney Griev. Comm'n v. Tanko*, 408 Md. 404, 969 A.2d 1010 (2009), we found certain conduct not to fit the description of conduct prejudicial to the administration of justice. In *Alison II*, the attorney made several discourteous statements in open court during a jury trial against an insurance company. He stated that "one learns to expect to get jerked around" when dealing with an insurance company and referred to the company's insured in the case as an idiot. *Alison II*, 349 Md. at 627, 709 A.2d at 1213. Opposing counsel moved for a mistrial and the trial court granted the motion. We held that the relevant comments did not prejudice the administration of justice, notwithstanding that the hearing judge found that they caused a mistrial to be granted. *Id.* at 629–30, 709 A.2d at 1215. We noted that although the comments did "not warrant disciplinary action, we do suggest that Respondent was rather overzealous in his advocacy for his client, and we hasten to add that such remarks by Respondent during a jury trial are not approved of by this Court." *Id.* at 630, 709 A.2d at 1215.

In *Kalil*, the respondent was a non-practicing attorney who worked for the United States Department of Agriculture. As a result of a suspension from his employment, he filed a claim with the Merit Systems Protection Board ("MSPB"). Unhappy with the result obtained, he proceeded to place several telephone calls to two Administrative Law Judges on the MSPB involved with his case. *Kalil*, at 362–64, 936 A.2d at 856–57. On one occasion, he claimed to be calling on behalf of the District of Columbia Bar Counsel. *Kalil*, at 363, 936 A.2d at 857. We held that this conduct did not violate MRPC 8.4(d) because the telephone calls " 'were minimally intrusive' " and, thus, did not prejudice the administration of justice. *Kalil*, at 368, 936 A.2d at 860 (quoting the hearing judge's findings of fact and conclusions of law). In *Attorney Griev. Comm'n v. Tanko*, 408 Md. 404, 413, 419, 969 A.2d 1010, 1016, 1020 (2009), we held that obtaining a duplicate driver's license four days after the attorney's license was confiscated by the police, after

he had been stopped and arrested at a sobriety checkpoint, was not prejudicial to the administration of justice because there was clear and convincing evidence that, as a result of the attorney's agitated state at the time of his arrest, he did not realize that the police had taken his driver's license and did not read the informative documents the police gave him at the time of his arrest.

Taking into account the span of conduct in the cases discussed here, Respondent's conduct does not strike us as rising to the level of the misconduct found in the cases where violations of MRPC 8.4(d) were found. Petitioner did not adduce any evidence showing that Respondent's delay in responding to opposing counsel's letters or in returning the medical records late resulted in anything approaching prejudice to the administration of justice. A delay alone will unlikely be sufficient to show prejudice, absent any actual and substantial harm flowing from the delay. In *Alison II*, we declined to find that an attorney's comments that lead to a mistrial were prejudicial to the administration of justice. 349 Md. at 629–30, 642, 709 A.2d at 1215, 1221. A mistrial is much more costly in time and other resources than a refusal to respond to opposing counsel's letters, especially considering that opposing counsel, in order to breach the apparent stonewall, could (as he ultimately did) file a motion aimed at a court-ordered return of the medical records. While it is unfortunate that he and his client were put to this trouble, the case does not reach the level traditionally we have required to reach sanctionable conduct.

We can find no prior instance where we held that the failure to respond to opposing counsel or the retention of documents beyond a time or event specified in an agreement between the parties amounted to conduct prejudicial to the administration of justice. Before Bar Counsel's involvement in the present case, Kruger filed a motion in the Circuit Court seeking to obtain Respondent's copy of the medical records. Respondent returned the records to Kruger before the trial court could rule on that motion. Conduct requiring a party to file a motion to have the court intercede to resolve an asserted

entitlement by enforcing a confidentiality agreement, in this case, is not prejudicial to the administration of justice. It is often the only way to resolve a dispute between opposing parties. If we were to find an ethical violation in this case, we fear falling down the "slippery slope" to the point where parties or counsel threaten to file (or file actually) a complaint with the Attorney Grievance Commission every time a motion becomes necessary to seek enforcement of a settlement agreement or every time there is a tardy response to discovery or a discovery dispute. Ironically, to create such a tool here would deliver a tactical weapon that likely would foster increased incivility and lack of professionalism than attaches to Respondent's conduct.

In *Attorney Griev. Comm'n v. Link,* 380 Md. 405, 428, 844 A.2d 1197, 1212 (2004), we held that an attorney's non-criminal, but uncivil and discourteous, behavior outside the practice of law did not "fit within the construct" of MRPC 8.4(d). In its Recommendation for Sanction here, Petitioner suggests that *Link* may be distinguished from the instant case because the conduct at issue occurred within the scope of Respondent's representation of Ms. Snowden. We disagree. The isolated dispute here, which could have been resolved through a motion, does not rise to the level of the conduct involved in other cases where we found sanctionable conduct. Similar to the conduct in *Kalil,* there is no evidence in this record that Respondent's failure to respond to Kruger and his overdue retention of Mr. Snowden's records resulted in any prejudice to the administration of justice. Ultimately, the records were returned, copies were destroyed, and no actual effort to utilize them in the *Chesters* case occurred.

Although Respondent's conduct in the instant case was discourteous, contrary to the parties' Agreement, and occurred in the course of representing his client, it is not sanctionable behavior under the present version of MRPC 8.4(d). Respondent's conduct in this case seems to have been instigated as a means to overcome a tactical error in framing the settlement of divorce issues. Although a misguided initiative, it did not reach a degree where it became prejudicial to

the administration of justice. It did not delay proceedings, involve deceit, result in any prejudice to Respondent's client, or apparently result in substantially increased fees to the litigants involved (at least based on the record before us). The proper corrective measure, which happened in this case, for Respondent's behavior was for opposing counsel to file a motion and let the court decide whether Respondent's retention of the records was proper.

Lest the victor's laurel here on Respondent's brow be thought to be vindication of his conduct, we disabuse any reader of that perception. In *Link*, we noted that "attorneys are required to act with common courtesy and civility at all times in their dealings with those concerned with the legal process...." *Link*, 380 Md. 405, 425, 844 A.2d 1197, 1209. "An attorney whose conduct in the practice of law is characterized by lack of civility, good manners and common courtesy tarnishes the image of what the bar stands for." *Id.* at 426, 844 A.2d at 1210. We want to be very clear to remind the members of the Bar of this Court that we do not condone the "trench warfare" litigation style represented by Respondent's conduct here. As we said in *Link*,

> [t]his Court considers the respondent's conduct in this case to be most inappropriate and unfortunate, and it is conduct that we do not condone. Nevertheless, it being neither criminal nor conduct of the kind that harm or potential harm flowing from it is patent, we hold that it is not conduct that is prejudicial to the administration of justice and, thus, is not sanctionable.

*Id.* at 429, 844 A.2d at 1212. Although Respondent regretfully may be correct in his assertion that such behavior is "ordinary" in high stakes or contentious divorce litigation, that does not mean that it is an applaudable or laudable way to practice law in this State.[10]

---

**10.** The Preamble to the Maryland Rules of Professional Conduct provides that:

\*   \*   \*

▮ A lawyer's conduct should conform to the requirements of law, both in professional service to clients and in the lawyer's business

Respondent may be fortunate that we have not yet considered enaction of the recommendations of the Maryland Judicial Commission on Professionalism (the "Commission") as set forth in its Final Report and Recommendations. In that report, the Commission, chaired by Judge Battaglia, recommended that the Court adopt Standards of Professionalism as an Appendix to the Rules of Professional Conduct and impose sanctions on attorneys who violate the Standards of Professionalism. Maryland Judicial Commission on Professionalism, Final Report and Recommendations, at 9 (2006), *available at* http://www/profession&1falism/pdfs/finalreport.pdf. The Commission recommended several standards that implicate Respondent's conduct. One such standard is that a lawyer should "respond to all communications promptly, even if more time is needed to locate a complete answer. Delays in returning telephone calls may leave the impression that the call was unimportant or that the message was lost and leads to an elevation in tension and frustration and less effective communication." Final Report and Recommendations, at 7. Although the conduct at issue here did not involve, for the most part, a delay in returning phone calls, it did involve a failure to respond to communications generally and certainly did result in elevated tension, frustration, and less effective communication. Because Respondent did not respond to opposing counsel's repeated requests, opposing counsel had no way of knowing of Respondent's purported rationale for retaining the records and taking required action to bring an end to the impasse. If Respondent had acted with civility and common courtesy by responding to Kruger, he likely would have avoided these present proceedings. We hope the lesson was learned.

---

and personal affairs. A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others. A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials. While it is also a lawyer's duty, when necessary, to challenge the rectitude of official action, it is also a lawyer's duty to uphold legal processes.

The Report also calls on lawyers to demonstrate civility and respect "in all contexts, not just with colleagues, or in the courtroom, but with support staff and court personnel." Final Report and Recommendations, at 9. Here, Respondent's conduct demonstrated the opposite. His refusal to work with opposing counsel to try to reach an out-of-court resolution demonstrated incivility and disrespect.

At the present time, however, much of the Report remains hortatory. As a result, we have little choice but to conclude that the evidence that Bar Counsel presented was insufficient to demonstrate that Respondent violated MRPC 8.4(d). The petition for disciplinary action is dismissed.

**IT IS SO ORDERED.**